# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KAREN TICHY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cv-01959 |
| HYATT HOTELS CORPORATION; | ) | |
| HILTON DOMESTIC OPERATING | ) | Hon.  Rebecca R. Pallmeyer |
| COMPANY INC.; SIX CONTINENTS | ) | |
| HOTELS, INC.; MARRIOTT | ) | Magistrate Judge M. David Weisman |
| INTERNATIONAL, INC.; and | ) | |
| WYNDHAM HOTEL GROUP, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF JOINT MOTION TO DISMISS FIRST AMENDED COMPLAINT

Dated:    June 22, 2018

**<u>TABLE OF CONTENTS</u>**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     PLAINTIFF'S ALLEGATIONS ........................................................................... 3

        A.      The Parties ................................................................................................. 3

        B.      The Distribution of Hotel Room Reservations Online ........................... 4

        C.      The Alleged Conspiracy ........................................................................... 5

        D.      Plaintiff's Claims ..................................................................................... 6

III.    ARGUMENT .......................................................................................................... 7

        A.      The Complaint's Conclusory Allegations of a Conspiracy Fail to Support An
                Antitrust Claim as a Matter of Law. ........................................................ 7

                1.      Plaintiff's Allegations of Similar Provisions in Separate Lodging
                        Agreements Between One OTA and Two Hotels Is Not Suggestive of
                        Conspiracy. ................................................................................... 9

                2.      The Dallas Hotel Conference and AHLA Board Meeting Allegations Do
                        Not Support an Inference of Conspiracy. .................................. 11

        B.      Plaintiff's Alleged Injury Is Far Too Remote, Speculative, and Implausible to
                Confer Antitrust Standing. ..................................................................... 15

IV.     DISMISSAL WITHOUT LEAVE TO AMEND IS APPROPRIATE ........................... 20

V.      CONCLUSION ..................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*188 LLC v. Trinity Indus., Inc.,*
  300 F.3d 730 (7th Cir. 2002) ................................................. 17

*Adams v. City of Indianapolis,*
  742 F.3d 720 (7th Cir. 2014) ............................................. 13, 17

*Addison Automatics, Inc. v. RTC Grp., Inc.,*
  No. 12 C 9869, 2013 WL 3771423 (N.D. Ill. July 16, 2013) ............................................. 14

*Alvord-Polk Inc. v. F. Schumacher & Co.,*
  37 F.3d 996 (3d Cir. 1994).............................................. 12

*Am. Dental Ass'n v. Cigna Corp.,*
  605 F.3d 1283 (11th Cir. 2010) ............................................. 11

*Arlin-Golf, LLC v. Vill. of Arlington Heights,*
  631 F.3d 818 (7th Cir. 2011) ............................................. 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................. 8, 14

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
  459 U.S. 519 (1983)............................................. 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................. passim

*Business Elecs. Corp. v. Sharp Elecs. Corp.,*
  485 U.S. 717 (1988)............................................. 4

*CDC Techs., Inc. v. IDEXX Labs, Inc.,*
  186 F.3d 74 (2d Cir. 1999)............................................. 19, 20

*Denny's Marina, Inc. v. Renfro Prods., Inc.,*
  8 F.3d 1217 (7th Cir. 1993) ............................................. 7

*Facebook, Inc. v. Teachbook.com, LLC,*
  819 F. Supp. 2d 764 (N.D. Ill. 2011) ............................................. 13

*Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assocs., Inc.,*
  787 F. Supp. 2d 725 (N.D. Ill. 2011) ............................................. 7, 14

*GlobalTap LLC v. Smart Tap LLC,*
  No. 13 C 5322, 2015 WL 791256 (N.D. Ill. Feb. 24, 2015)............................................. 8, 14

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,*
  998 F.2d 391 (7th Cir. 1993) ............................................. 15

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ............................................................. 12

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ................................................... 17

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) .................................................................... 10

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................. 11, 12, 14

*In re Interest Rate Swaps Antitrust Litig.*,
    261 F. Supp. 3d 430 (S.D.N.Y. 2017) ................................................... 11

*In re Musical Instruments & Equipment Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ...................................................... passim

*In re Nat'l Ass'n of Music Merchs.*,
    MDL No. 2121, 2012 WL 3637291 (S.D. Cal. Aug. 20, 2012) ......... 13

*In re Online Travel Company (OTC) Hotel Booking Antitrust Litig.*,
    997 F. Supp. 2d 526 (N.D. Tex. 2014) ....................................... passim

*In re Text Messaging Antitrust Litig.*,
    782 F.3d 867 (7th Cir. 2015) ................................................................ 13

*Int'l Bhd. of Teamsters Local 734 Health & Welfare Tr. Fund v. Phillip Morris, Inc.*,
    34 F. Supp. 2d 656 (N.D. Ill. 1998),
    aff'd sub nom. *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999) ................. 20

*Kleen Products LLC v. International Paper*,
    276 F. Supp. 3d 811 (N.D. Ill. 2017) ................................................... 11

*Kleen Products, LLC v. Packaging Corp. of Am.*,
    775 F. Supp. 2d 1071 (N.D. Ill. 2011) .............................................. 8, 9

*Kochert v. Greater Lafayette Health Svcs., Inc.*,
    463 F.3d 710 (7th Cir. 2006) ................................................................ 15

*Loeb Indus., Inc. v. Sumitomo Corp.*,
    306 F.3d 469 (7th Cir. 2002) .......................................................... 19, 19

*Midwest Gas Servs., Inc. v. Ind. Gas Co., Inc.*,
    317 F.3d 703 (7th Cir. 2003) .......................................................... 15, 16

*Moore v. Boating Industry Assocs.*,
    819 F.2d 693 (7th Cir. 1987) ................................................................ 11

*Morrison v. Murray Biscuit*,
    797 F.2d 1430 (7th Cir. 1986) .............................................................. 10

*Omnicare, Inc. v. UnitedHealth Group, Inc.*,
    629 F.3d 697 (7th Cir. 2011) .................................................................. 7

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
    524 F. Supp. 2d 1031 (N.D. Ill. 2007) ............................................................ 15, 16

*Rivera v. Lake County*,
    974 F. Supp. 2d 1179 (N.D. Ill. 2013) ................................................................ 14

*Rocha v. FedEx Corp.*,
    15 F. Supp. 3d 796 (N.D. Ill. 2014) ..................................................................... 7

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
    376 F.3d 1065 (11th Cir. 2004) ......................................................................... 20

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ......................................................................... 16

*The America Channel, LLC v. Time Warner Cable, Inc.*,
    2007 WL 142173 (D. Minn. Jan. 17, 2007) ...................................................... 16

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
    971 F. Supp. 2d 368 (S.D.N.Y 2013) ............................................................... 16

*Wellwoods Dev. Co. v. City of Aurora*,
    631 F. Supp. 221 (N.D. Ill. 1986) ..................................................................... 16

## STATUTES

15 U.S.C. § 1 ........................................................................................................... 6

## RULES

Fed. R. Civ. P. 12 ................................................................................................ 7, 8

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 18

## I.    INTRODUCTION

This case is about one facet of the search results that consumers see when they use search engines like Google or Bing to search for hotel rooms online.  Plaintiff accuses five hotel companies of conspiring to impose restrictions on how they, or Online Travel Agencies ("OTAs"), use branded keyword search terms when placing advertisements on those search engines.  But despite its more than one hundred paragraphs, the Amended Complaint is void of factual allegations to state such a claim.  Instead, it is constructed around parallel conduct that Plaintiff acknowledges each Defendant had sound reasons to pursue unilaterally, and the kinds of labels and conclusions that the Supreme Court has declared insufficient as a matter of law.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Plaintiff's claim is built primarily on her allegation that each Defendant, *individually*, entered into written contracts with the two major OTAs, Expedia and Priceline, that limited those OTAs' ability to engage in branded keyword advertising.  Plaintiff claims that these contracts— vertical agreements between each Defendant and an OTA that distributes that Defendant's hotel rooms online—prohibit the OTAs from purchasing online advertising for consumers' searches that use the Defendant's trademarked brands as keywords.  Conscious of the fact that such vertical distribution agreements are lawful, Plaintiff does not actually challenge them.  Instead, she contends they are a manifestation of a theorized horizontal conspiracy among the Defendants.

But the Supreme Court held in *Twombly* that this type of parallel conduct is insufficient to plead the existence of a conspiracy.  *Id.* at 557.  Plaintiff herself explains why a hotel company would unilaterally insert such terms into its distribution agreements in exchange for the OTA's right to display the hotel's rooms:  Not only does it cost a hotel less when a guest books the same room directly from the hotel rather than through an OTA, but that hotel brand can also better develop its relationship with the guest into a long-lasting one.

1

This sort of parallel conduct—particularly where Plaintiff *admits* each Defendant has a rational and independent interest in pursuing that conduct—could support an inference of a horizontal conspiracy only if she pled facts demonstrating the existence of "plus factors" that suggest a preceding agreement. But she has failed to do so. Plaintiff alleges that Defendants attended a 2014 travel industry trade conference and had representatives on the 60-person board of the American Hotel & Lodging Association ("AHLA"). (First Amended Class Action Complaint ("Complaint" or "Compl.") ¶¶ 43, 45.) But there are no facts suggesting that Defendants spoke—let alone agreed upon anything—at the 2014 trade conference, or at any AHLA Board meeting. And conclusory assertions—like Plaintiff's allegation that Defendants "used AHLA meetings and other meetings to discuss, coordinate, and arrive at their illegal scheme" (*id.* ¶ 45)—are legally insufficient to state a claim. There are no facts regarding the dates, attendees, or content of any "meetings" of the AHLA Board, and courts uniformly hold this sort of commonplace *opportunity* to conspire insufficient to state an antitrust claim.

Indeed, the Complaint tracks the same framework and conclusory allegations of conspiracy that Plaintiff's counsel previously made against these same Defendants, and that Judge Boyle of the United States District Court for the Northern District of Texas dismissed with prejudice. *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526 (N.D. Tex. 2014) ("*OTC Hotel Booking*"). As here, the plaintiffs there built their complaint on purportedly similar terms in the vertical distribution contracts between individual hotel Defendants and OTAs, accompanied by bare allegations of trade association membership and meetings. Consistent with a long line of Supreme Court, circuit, and district court precedent, Judge Boyle held these allegations to be inadequate as a matter of law. *See id.* at 537 ("[L]ike in *Twombly*, Defendants' parallel adoption of similar business strategies is not suspicious or suggestive of an agreement. On the contrary, common economic experience and the Complaint

itself offer a natural or 'obvious' explanation for why the Hotel Defendants on one side, and OTA
Defendants on the other, individually entered into the same two-term [retail price maintenance]
agreements.") and 541 ("[T]he fact that executives of certain Defendants were present at the same
annual industry conferences is no more suggestive of a conspiracy than the trade association
allegations in *Twombly*. The attendance of these executives merely presents an opportunity to
conspire, but the surrounding allegations fail to suggest they actually did conspire."). Plaintiff's
repackaged allegations about industry conferences in this case are more sparse, and the vertical
advertising limitations are even less suggestive of conspiracy, than the vertical price restrictions
on which the *OTC Hotel Booking* plaintiffs premised their failed complaint.

Finally, the Complaint suffers from another, independently dispositive flaw: Plaintiff
lacks antitrust standing. Any alleged injury from a restraint on bidding for keyword searches
hosted by third-party search engine companies is too attenuated and speculative to confer antitrust
standing on Ms. Tichy, a consumer. That is particularly clear here given her own allegations of
the ready availability of the kind of comparative price information she claims was suppressed.

Because neither the facts nor the underlying legal theory can support a viable antitrust
claim, Defendants request that the Complaint be dismissed with prejudice.

## II.     PLAINTIFF'S ALLEGATIONS

### A.     The Parties

Plaintiff Karen Tichy alleges that, "[i]n 2015, 2016, and 2017," she "searche[d] for hotel
rooms on Google using Defendants' branded keywords." (Compl. ¶ 15.) Over that time, Ms.
Tichy alleges she began to notice that fewer options were presented in response to those searches,
and so she increasingly just visited Defendant Marriott's website, and "reserved and purchased
Marriott-branded rooms" there. (*Id.*) She further alleges she purchased hotel rooms "from other
Defendants using their branded websites" at other, unidentified times during that period. (*Id.*)

Defendants Hyatt Hotels Corporation, Marriott International, Inc., Wyndham Hotel Group, LLC, Hilton Domestic Operating Company Inc., and Six Continents Hotels, Inc. (the "Defendants") are five hotel companies headquartered across the United States. (*Id*. ¶¶ 16-20.)

### B. The Distribution of Hotel Room Reservations Online

Plaintiff concedes that consumers seeking to reserve a hotel room online have "a number of options": (1) they "can navigate directly to a hotel website (like Hilton.com or Marriott.com)" or (2) "directly to one of the OTAs (like Expedia.com or Priceline.com)" or (3) they can search at an online search engine like Google or Microsoft's Bing. (Compl. ¶ 26.) Consumers who opt to search for hotel rooms using online search engines are typically presented with both "algorithmic" (or organic) search results, and advertisements or "paid search" results—through which "[a]dvertisers bid to have their ads appear in response to particular keywords." (*Id*. ¶ 28.) The alleged anticompetitive restraint here concerns only this last aspect of the third option—paid advertisements for online search engines.

The Complaint also acknowledges that OTAs, "through their web portals," enable consumers "to rent hotel rooms in many different hotels throughout the country," and "allow consumers to easily view and compare prices, ratings, features, locations, and other relevant data" about Defendants' hotels, and those of other chains and independent hotels as well. (*Id.* ¶ 33.) The popularity of OTAs has grown "with consumers who can now easily obtain relevant information about thousands of hotel rooms around the world." (*Id.*) The relationship between each Defendant and OTA is, as Plaintiff describes, a vertical one:[1] The hotels provide access to their room inventories, and OTAs display those rooms, pursuant to written "lodging agreements."

---

[1] *See Bus. Elecs. Corp. v. Sharp Elecs. Corp*., 485 U.S. 717, 730 (1988) ("Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints.").

(*Id*. ¶¶ 34, 38.)  According to the Complaint, OTAs are a "valuable sales channel for the Defendants," but the OTAs charge commissions of 12-20% and are "costly to hotels."  (*Id*. ¶¶ 2, 37.)  Accordingly, a booking made through a Defendant's website will cost a hotel less than an identical booking made through the OTA.  (*Id*. ¶ 36.)

As Plaintiff admits, there are very good reasons for a hotel brand to prefer potential customers to make room reservations directly through its own website.  A hotel can "avoid[] a commission" it would have to pay an OTA, resulting in lower costs to fill an  "identically priced" room.  (*Id*. ¶¶ 7, 36.)  And when a customer books directly on its website, the branded hotel gains the "customer relationship, and any data associated with that customer," enabling it to "build customer loyalty"—by focusing its services to meet the guest's needs—and, thus, "sell other hotels within their group for future trips made by that customer."  (*Id*. ¶¶ 7, 37.)

## C.     The Alleged Conspiracy

The Complaint alleges a conspiracy among the Defendants in which they agreed to "eliminate branded keyword search advertising against each other."  (*Id*. ¶ 1.)  Plaintiff claims that this supposed agreement, allegedly reached "[i]n or about 2015," was "in two parts" (*id*. ¶ 12):

> First, each of the Defendants agreed they would refrain from bidding for each
> other's branded keywords.  Second, each of the Defendants agreed they would
> insert contractual clauses into their lodging agreements with OTAs to prohibit
> those OTAs from bidding on the branded keywords of the hotel Defendant, and
> to require the OTAs to attempt to compel any affiliated online travel agencies
> to refrain from bidding on branded keywords.

(*Id*.)  The Complaint does not identify *any* communications through which Defendants reached this supposed horizontal agreement.  Plaintiff alleges that the 2014 Dallas Hotel Conference was "attended by representatives of Defendants" (*id*. ¶ 43), but does not allege that Defendants' representatives ever met, spoke, or reached agreement on anything at this conference.  She also alleges that certain of Defendants' representatives sat on the board of the AHLA (*id*. ¶ 45), but does not identify any AHLA meeting at which those board members discussed online keyword

advertising, let alone reached any agreement regarding it.

Instead, the only facts pled in the Complaint are that, "beginning in 2015," each Defendant "inserted language into their lodging agreements with Expedia and Priceline that prohibited bidding on the Hotel's branded keywords." (*Id.* ¶¶ 51-53 (citing two examples of bilateral OTA lodging agreements between Expedia and two Defendants that purportedly contain such vertical restraints)). The Complaint further alleges that, "[a]lso beginning in 2015," unidentified Defendants sent cease-and-desist letters to "affiliate" OTAs, *i.e.*, OTAs that obtain their inventory from the OTAs (like Expedia and Priceline) with which the Defendants have direct relationships, to prevent them too from "engaging in branded keyword search advertising." (*Id.* ¶ 54).

The balance of the allegations is limited to citing Exxon Mobil's antitrust compliance policy (*id.* ¶ 40), purporting to describe the Federal Trade Commission's lawsuit against 1-800-Contacts (*id.* ¶¶ 46-48), and providing (incomplete) website screenshots of search results from four undated Google searches (*id.* ¶¶ 55-59).

### D.    Plaintiff's Claims

The Complaint asserts two specific claims for relief: (i) violation of 15 U.S.C. § 1, asserting that "[t]he agreement not to compete by bidding on one another's branded keywords by the Defendants and by the OTAs is a horizontal *per se* bid rigging and group boycott" (*id.* ¶ 82); and (ii) violation of 15 U.S.C. § 1, asserting that "[t]he agreements, and their enforcement, constitute contracts, combinations, and conspiracies that substantially, unreasonably, and unduly restrain trade in the relevant market(s), and harmed Plaintiff and the Class thereby." (*Id.* ¶ 94.)

Plaintiff purports to bring her antitrust claims on behalf of a putative class of "[a]ll persons throughout the United States who, during the period January 1, 2015 through the present, paid for a room reserved from any OTA or Defendants' online websites." (*Id.* ¶ 71.)

## III.   ARGUMENT

To state a claim under Section 1 of the Sherman Act, a plaintiff must allege: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 809 (N.D. Ill. 2014) (quoting *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993)).  The facts alleged in Plaintiff's Complaint demonstrate nothing more than parallel conduct by Defendants, and she admits that each Defendant had independent incentives to engage in that conduct.  Those allegations fail to state a Section 1 claim as a matter of law.  Plaintiff's attempt to embellish them with bald assertions that Defendants conspired, or had the opportunity to conspire at trade shows, is legally insufficient.  *See Twombly*, 550 U.S. at 555-56 (requiring plausible factual allegations to survive Rule 12, and holding that a formulaic recitation of a claim's elements or mere labels are insufficient).  Further, Plaintiff's theory of injury—higher room rates from the alleged suppression of comparative information—is far too attenuated and speculative to give her antitrust standing wholly apart from her insufficient factual allegations.

### A.   The Complaint's Conclusory Allegations of a Conspiracy Fail to Support An Antitrust Claim as a Matter of Law.

An agreement is the central tenant of a Section 1 claim, and an antitrust plaintiff "must allege facts that, if true, demonstrate that the conspirators 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Rocha*, 15 F. Supp. 3d at 809 (quoting *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 706 (7th Cir. 2011)); *see also Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assocs., Inc*., 787 F. Supp. 2d 725, 731 (N.D. Ill. 2011) (Pallmeyer, J.) (granting motion to dismiss where "complaint [did] not include 'enough factual matter' to suggest that an agreement was made between" defendants) (citing *Twombly*, 550 U.S. at 556).

The Complaint does not allege any direct evidence of an agreement among the five

7

Defendants. There are not even factual allegations of *any* communications through which an agreement supposedly formed. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015) ("Conspiracy is a legal conclusion. Rather, plaintiffs must plead evidentiary facts: 'who did what, to whom (or with whom), where, and when'") (internal citations omitted); *GlobalTap LLC v. Smart Tap LLC*, No. 13 C 5322, 2015 WL 791256, at *4 (N.D. Ill. Feb. 24, 2015) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff instead seeks to infer an illegal agreement by accusing Defendants of engaging in parallel conduct. But, as the Supreme Court explained in confronting the antitrust complaint in *Twombly*, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to survive a Rule 12 motion. 550 U.S. at 557 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Rather, allegations of parallel conduct "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id*. This is particularly important where, as here, the parallel conduct at issue is so plainly in the unilateral self-interest of each Defendant. *See id*. at 554 (parallel conduct can be "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market"); *Musical Instruments*, 798 F.3d at 1193 (multiple firms "may arrive at identical decisions independently, as they are cognizant of—and reacting to—similar market pressures").

To guard against mistaken inferences of conspiracy from parallel conduct, the law requires Plaintiff to identify further circumstances pointing towards a "meeting of the minds," or "plus factors," to make her conspiracy claim plausible. *Twombly*, 550 U.S. at 557; *Kleen Prods.,*

*LLC v. Packaging Corp. of Am.*, 775 F. Supp. 2d 1071, 1078 (N.D. Ill. 2011) ("Plaintiffs must provide additional contextual factors that support a plausible inference of an agreement"). Such "plus factors" are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *Musical Instruments*, 798 F.3d at 1194 (citing *Twombly*, 550 U.S. at 556 n.4).

Plaintiff cannot meet this standard. The Complaint itself pleads an obvious, alternative and legitimate explanation for the allegedly parallel conduct. And the allegations regarding attendance at an industry conference and participation in a trade association have repeatedly been rejected as insufficient to place such conduct in the context of a preceding agreement.

### 1. Plaintiff's Allegations of Similar Provisions in Separate Lodging Agreements Between One OTA and Two Hotels Is Not Suggestive of Conspiracy.

No conspiracy can be inferred from the "real 'nub' of the Complaint": Plaintiff's allegations regarding similar provisions in Defendant's individual, bilateral lodging agreements with OTAs. *OTC Hotel Booking*, 997 F. Supp. 2d at 537. The Complaint does not plead any facts to place this alleged parallel conduct in a context suggestive of conspiracy. Rather, it affirmatively explains the *independent* incentives of each Defendant to adopt the challenged provisions absent any agreement with its competitors.

Plaintiff admits that hotels want consumers to book rooms directly on the hotels' own websites rather than on OTA websites, because the hotel's costs are lower when a guest books an equally-priced room directly rather than through an OTA (Compl. ¶ 36), and the hotel brand prefers to hold the relationship with the customer, enabling it to address the guest's interests and win her loyalty in a marketplace where "a wide variety of competitive alternatives" are available (*id.* ¶ 37). The OTA's efforts on the hotel's behalf can instead be focused on reaching consumers who have *not* already "express[ed] an interest in [the hotel's] brand" by employing that brand to

formulate their search queries.  (*Id.* ¶ 3.)

Any restriction on OTA advertising is therefore in each hotel Defendant's independent self-interest.  *See OTC Hotel Booking*, 997 F. Supp. 2d at 537 ("As a general matter, it is quite natural for a seller to want to control the online [advertising] of its product.").  Parallel provisions across hotel lodging agreements merely reflect "independent responses to common stimuli" and provide no basis from which to infer a conspiracy.  *Twombly*, 550 U.S. at 556 n.4; *OTC Hotel Booking*, 997 F. Supp. 2d at 537 ("[L]ike in *Twombly*, Defendants' parallel adoption of similar business strategies is not suspicious or suggestive of an agreement."); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 (2d Cir. 2007) ("Similar contract terms can reflect similar bargaining power and commercial goals (not to mention boilerplate)[.]").[2]

Plaintiff's attempt to base a Section 1 claim on nothing but this allegedly parallel conduct is insufficient as a matter of law.  *See Twombly*, 550 U.S. at 564-66; *Musical Instruments*, 798 F.3d at 1195 (finding plaintiffs' Section 1 allegations insufficient where the complaint provided "ample independent business reasons" why each defendant enforced their policies absent agreement); *OTC Hotel Booking*, 997 F. Supp. 2d at 537 ("[C]ommon economic experience and the Complaint itself offer a natural or 'obvious' explanation" for why hotels and OTAs

---

[2]   Plaintiff does not claim that the vertical agreements between each Defendant and OTA are themselves unlawful, and any such claim would be futile.  To challenge each of Defendant's contracts allegedly restricting an OTA's advertising as unreasonable would, among other things, require *each* Defendant to have market power.  *E.g.*, *Morrison v. Murray Biscuit*, 797 F.2d 1430, 1435 (7th Cir. 1986) ("[T]o establish unreasonableness, the first thing a plaintiff must do is prove that the supplier had significant market power[.]").  Plaintiff does not—and could not plausibly—allege such power in what she recognizes is a robustly competitive marketplace for hotel rooms, *i.e.* one in which the *five* Defendants together possess well less than 60% share, *compare* Compl. ¶ 21 *with* Dkt. 1, Class Action Complaint ¶ 22, with the rest spread among other chains and countless independent hotels.  *See* Compl. ¶ 33; *see also OTC Hotel Booking*, 997 F. Supp. 2d at 538 n.15 ("hotel rooms" are "competitive products").

individually entered the rate parity agreements at issue).[3]

### 2. The Dallas Hotel Conference and AHLA Board Meeting Allegations Do Not Support an Inference of Conspiracy.

Plaintiff's other allegations about an industry conference and trade association membership are also legally insufficient to support an inference of conspiracy. Plaintiff attempts to construct the illusion of conspiracy by citing Defendants' alleged attendance at a 2014 hotel conference in Dallas and various unidentified "meetings" of the AHLA. (Compl. ¶¶ 43-45.) But these sorts of routine business dealings fall far short of constituting a "plus factor" sufficient to infer an agreement. The law is uniform on this point: "[m]ere membership in a trade association, attendance at trade association meetings and participation in trade association activities are not, in and of themselves, condemned or even discouraged by the antitrust laws." *Moore v. Boating Indus. Ass'ns.*, 819 F.2d 693, 712 (7th Cir. 1987) (citation omitted); *Twombly*, 550 U.S. at 567 n.12 ("Belong[ing] to the same trade guild as one['s] . . . competitors" does not render a conspiracy plausible); *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 834 (N.D. Ill. 2017) (same).[4]

---

[3]  Plaintiff's allegation that, "beginning in 2015, the Defendants began a campaign of sending cease-and-desist letters to 'affiliate' OTAs," is equally insufficient. (Compl. ¶ 54.) Putting aside this allegation's vague and conclusory nature, it at most shows Defendants' enforcement of their contractual rights under the vertical lodging agreements, and is explained by the same independent motives as the underlying contracts. *See OTC Hotel Booking*, 997 F. Supp. 2d at 539-540 (allegations of Defendants enforcing vertical agreements with OTAs, "which Plaintiffs do not challenge as unlawful, . . . constitute another form of parallel behavior").

[4]  *See also OTC Hotel Booking*, 997 F. Supp. 2d at 541 ("[T]he fact that defendants' decision-makers had the opportunity to meet and conspire at trade shows, standing alone, isn't suspicious") (citations and internal quotation omitted); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) ("[I]t was well-settled before *Twombly* that participation in trade organizations provides no indication of conspiracy"); *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 471 (S.D.N.Y. 2017) ("[A] mere opportunity to conspire at legitimate meetings does not support an inference that an illegal combination actually occurred") (internal quotations omitted); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) ("Plaintiffs have not pleaded that

There are no allegations that Defendants ever spoke to each other—much less agreed on anything—at the Dallas Hotel Conference (or at any time). Citing to the slides presented by two conference *speakers*, neither of whom was employed by a Defendant, does nothing to further the plausibility of an alleged agreement among the Defendants; indeed, the Complaint does not allege that any representative of a Defendant even was present at the presentations referenced, let alone that those presentations led to a conscious agreement among Defendants. Rather, the Complaint cherry-picks four out-of-context excerpts from the publicly available slides and then concludes that Defendants "used such gatherings" to "coordinate agreements to temper competition among and between them." (Compl. ¶ 42.) That is not even close to stating a viable claim.

Nor is it surprising that hotel and hospitality industry conferences include presentations regarding industry trends, and no nefarious purpose can be gleaned from such routine conduct. *See OTC Hotel Booking*, 997 F. Supp. 2d at 541 ("[T]he 'pricing discussion' that took place at the EyeforTravel conferences are not suspicious at all. Plaintiffs cherry-pick words like 'price' and 'rate parity' from topic headings at the conferences in an effort to categorize these as 'pricing discussions' among competitors, but a fair reading of these topic headings reveals innocent business-related discussions that one would expect to see at an industry conference.").[5]

The inference of an illegal agreement from these allegations is even more implausible here

---

defendants ever met and agreed to fix prices; they plead at most that defendants had the opportunity to do so because they attended many of the same meetings.").

[5] *See also Musical Instruments*, 798 F.3d at 1196 ("[P]articipation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement."); *Alvord-Polk Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1013-15 (3d Cir. 1994) (finding no inference of conspiracy from "communications" and "informational exchanges" between competitors at trade association conventions on strategies to protect members from new competition absent communications that "rise to the level of an agreement"); *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) ("Gathering information about pricing and competition in the industry is standard fare for trade associations. If we allowed conspiracy to be inferred from such activities alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action.").

given the wide variety of attendees at the Dallas Hotel Conference, including law firm attorneys, hospitality advisors, real estate advisory firms, agents, and developers, investment firms, management consultants, hotel and resort owners of various sizes, and even the Mayor of Irving, Texas.[6]  *See In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 878 (7th Cir. 2015) (presence of representatives of companies not alleged to be part of the conspiracy dispels probability of collusion at trade association meetings); *OTC Hotel Booking*, 997 F. Supp. 2d at 541 ("In fact, the presence of non-defendants at the EyeforTravel conferences—including airline representatives and a business school professor—belies the suggestion that a secretive price fixing agreement came out of these meetings."); *In re Nat'l Ass'n of Music Merchs.*, MDL No. 2121, 2012 WL 3637291, at *2 (S.D. Cal. Aug. 20, 2012) ("The presence of numerous uninvolved observers at [trade association meetings where pricing policies were discussed] tends to dispel any specter of illegality . . . if any price-fixing agreements were made during such meetings, the presence of numerous witnesses would allow Plaintiffs to allege the specifics of such agreements.").

Plaintiff's allegations regarding Defendants' membership on the AHLA Board are equally deficient.  Plaintiff alleges that "[t]he AHLA is an organization through which Defendants coordinated their conduct," and that Defendants "used AHLA meetings and other meetings to discuss, coordinate, and arrive at their illegal scheme to stop competitive branded keyword bidding."  (Compl. ¶ 45.)  Both allegations are conclusory and unsupported by any *facts*.  *E.g.*,

---

[6]   This diverse group of attendees is apparent from the publicly available slides referenced in the Complaint.  *See* Compl. ¶ 43, n. 2 (citing http://www.dallashotelconference/Documents/2014_Dallas_Hotel_Conference_Presentations.pdf, which includes reference to a variety of moderators, panelists, sponsors and award winners present at the Conference).  None are employees of Defendants.  "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (internal quotations and citations omitted).  *See also Facebook, Inc. v. Teachbook.com, LLC*, 819 F. Supp. 2d 764, 770 (N.D. Ill. 2011) (noting that courts "are free to examine documents incorporated into the complaint by reference") (internal quotations and citations omitted).

13

*Iqbal*, 556 U.S. at 678 (neither "labels and conclusions" nor "'naked assertion[s]' devoid of 'further factual enhancement'" can render a complaint sufficient) (quoting *Twombly*, 550 U.S. at 555, 557); *Frantzides*, 787 F. Supp. 2d at 731 ("The court is not persuaded that such 'a bare assertion of conspiracy' accompanied by 'a conclusory allegation of agreement at some unidentified point' is adequate to allege an unlawful restraint of trade.").[7]

Nor does merely listing the names and titles of various of Defendants' executives as among the dozens of members on the AHLA Board suffice to transform such bald assertions in to legally viable ones. (Compl. ¶ 45.) Plaintiff offers no factual allegations about what the board discussed, and certainly none that would plausibly suggest that Defendants (but not the numerous other members of the board) reached an illicit agreement during board meetings. Indeed, as the AHLA's website reflects, there were ***fifty-six*** other representatives on the AHLA Board in 2014—representing hospitality, management, and hotel companies of various sizes and interests.[8] As with her allegations about the Dallas Hotel Conference, the presence of individuals not alleged to have participated in the alleged conspiracy belies any suggestion of collusion.

Plaintiff simply asks the Court to infer too much based on too little. The Complaint should be dismissed because Plaintiff's conspiracy allegations fail as a matter of law.

---

[7] *See also Musical Instruments*, 798 F.3d at 1194 n.6 ("The requirement that plaintiffs allege non-conclusory facts means that plaintiffs cannot plead merely parallel conduct and allege conspiracy. Conspiracy is a legal conclusion."); *GlobalTap*, 2015 WL 791256, at *4; *Graphics Processing Units*, 527 F. Supp. 2d at 1024 ("Plaintiffs allege in conclusory fashion that defendants fixed prices pursuant to an agreement, but that allegation is simply too conclusory to show a plausible entitlement to relief").

[8] *See* https://ahla.com/sites/default/files/2014%20AHLA%20Board%20of%20Directors_1.pdf. The Court may properly take judicial notice of this website. *See Addison Automatics, Inc. v. RTC Grp., Inc.,* No. 12 C 9869, 2013 WL 3771423 at *3 (N.D. Ill. July 16, 2013) (taking judicial notice of a website that described embedded products offered by Microsoft and Intel and customer services provided by Avnet); *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1187 (N.D. Ill. 2013) (granting motion for judicial notice of online NY Times article because facts "not subject to reasonable dispute that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" are subject to judicial notice) (internal quotations and citations omitted).

14

B. **Plaintiff's Alleged Injury Is Far Too Remote, Speculative, and Implausible to Confer Antitrust Standing.**

The Complaint also should be dismissed because Plaintiff fails to allege an injury sufficiently direct and concrete to establish antitrust standing. To plead a viable antitrust claim, Plaintiff must show she has antitrust standing—"a direct link between the antitrust violation and the antitrust injury."[9] *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 394-95 (7th Cir. 1993) (discussing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545-546 (1983) ("*AGC*"), which "applied traditional common-law tort principles to read a proximate cause element into § 4 actions"). *See also Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 524 F. Supp. 2d 1031, 1042 (N.D. Ill. 2007) (Pallmeyer, J.) ("[J]udicial construction has limited this right to relief to those plaintiffs who can 'most effectively vindicate the purposes of the antitrust laws' in a particular case.") (citing *Kochert*, 463 F.3d at 718).

The existence of "antitrust standing depends on offense-specific factors, including: (1) [t]he causal connection between the alleged anti-trust violation and the harm to the plaintiff; (2) [i]mproper motive; (3) [w]hether the injury was of a type that Congress sought to redress with the antitrust laws; (4) [t]he directness between the injury and the market restraint; (5) [t]he speculative nature of the damages; [and] (6) [t]he risk of duplicate recoveries or complex damages apportionment." *Midwest Gas Servs., Inc. v. Ind. Gas Co., Inc.*, 317 F.3d 703, 710 (7th Cir. 2003) (quotation omitted, listing the *AGC* factors). Plaintiff fails to plead a plausible link between Defendants' alleged conduct and her purported injury, and thus is not a "proper plaintiff" with antitrust standing. *See Omnicare*, 524 F. Supp. 2d at 1042.

As an initial matter, Plaintiff is not a participant in the market in which she claims the

---

[9] An "antitrust injury" is an injury "of the type the antitrust laws were intended to prevent and reflect the anticompetitive effect of . . . the violation[.]" *Kochert v. Greater Lafayette Health Svcs., Inc.*, 463 F.3d 710, 716 (7th Cir. 2006) (internal quotation omitted).

15

challenged conduct occurred. The Complaint asserts that Defendants unlawfully agreed to refrain from bidding on each other's branded keywords (Compl. ¶¶ 81-82, 85), but Plaintiff does not claim to participate—as seller or buyer—in such bidding. That bidding is hosted by the online search engines (Google and Microsoft), which allow potential advertisers to bid for keywords used in searches on their websites. (*Id.* ¶ 28.) Thus, only the search engines and online advertisers participate. As a result, Plaintiff lacks antitrust standing.[10] *See Omnicare*, 524 F. Supp. 2d at 1041-42 ("[A] plaintiff that is not a participant in the market where competition is restrained, and that suffers harm only in a fairly indirect way, lacks antitrust standing.") (citing *Wellwoods Dev. Co. v. City of Aurora*, 631 F. Supp. 221, 229-30 (N.D. Ill. 1986) (plaintiff was not a proper plaintiff where the market in which its alleged injury occurred was not the locus of the alleged restraint)); *Midwest Gas Servs.*, 317 F.3d at 710-11 (dismissing for lack of antitrust standing claims of gas marketing firm, which did not participate in gas transportation market purportedly restrained by alleged conspiracy, because there was no direct injury).[11]

Further, the causal link between Plaintiff's purported injury and the challenged conduct is far too remote and indirect, and her alleged damages too speculative, to confer antitrust standing. *See Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 485-86 (7th Cir. 2002) (copper scrap dealers failed to demonstrate sufficient causal link to defendants' conspiracy to manipulate

---

[10]  Plaintiff does not explicitly repeat in Count II that Defendants' engaged in "a group boycott or bid rigging" (Compl. ¶ 85), but Count II is based on the very same conduct and fails for the same reason. (*Id.* ¶ 90) (Count II "is brought in the alternative if the conduct at issue is not a *per se* violation").

[11]  *See also Tal v. Hogan*, 453 F.3d 1244, 1258 (10th Cir. 2006) (entity which was not a buyer or seller in allegedly bid-rigged market lacked antitrust standing); *The Am. Channel, LLC v. Time Warner Cable, Inc.*, No. 06-2175, 2007 WL 142173, *5 (D. Minn. Jan. 17, 2007) (cable television network lacked standing to challenge bid-rigging of asset purchase of bankrupt cable system (Adelphia) by its rivals because "the only persons that would have been harmed from the bid-rigging would be Adelphia's creditors or Adelphia itself"); *Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 386 (S.D.N.Y 2013) (unsecured creditor-supplier was not an "efficient enforcer" with standing to challenge bid-rigging of sale of assets of debtor).

copper futures market to support antitrust standing where numerous other factors affected scrap pricing, resulting in an indirect injury causing dealers at best speculative damages); *In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 401-05 (S.D.N.Y. 2011) (dismissing complaint for lack of antitrust standing where CD purchasers failed to allege a sufficient linkage between CD market and Internet Music market to explain how alleged conspiracy to fix Internet Music prices would affect CD pricing). The gist of Plaintiff's claim is that Defendants, by supposedly agreeing to eliminate competitive keyword bidding on their brand names, have ensured that only their own websites will be presented as paid search results when someone searches for those brand names. Plaintiff claims that this, in turn, has resulted in higher hotel room prices for her and other consumers. But Plaintiff alleges no facts sufficient to establish or even suggest either link in this supposed causal chain.

First, Plaintiff has not adequately alleged that searching for Defendants' brand names on Google or Microsoft Bing return results that are limited to the Defendants' websites. Plaintiff cites four Google searches that she supposedly ran—for "Honolulu Hyatt," "Detroit Marriott," "Los Angeles InterContinental," and "Chicago Hilton"—and displays partial screenshots of her search results, supposedly showing that the only results returned were for Defendants' websites. But looking at the entire web results—not just the snippets included by Plaintiff—shows that her allegations are simply untrue.[12] A Google search for "Honolulu Hyatt" produces, as its first result, a Google Maps results box which contains three links; clicking on any one of those links presents the consumer with a selection of several OTA links. *See* Exhibit A. Similarly, reviewing

---

[12]    The Court may properly consider these exhibits. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (district court properly considered evidence submitted in support of Rule 12(b)(6) motion without converting it to one for summary judgment, where evidence was referenced in the complaint and central to the claim, and defendant in effect alleged that plaintiff only submitted those portions of the evidence beneficial to its case and the court needed to view the full document to understand the parties' dispute); *Adams*, 742 F.3d at 729.

the entire Google results page for "Honolulu Hyatt"—rather than the artificially truncated version provided by Plaintiff—reveals links to OTAs like tripadvisor.com and booking.com, among other websites. *See id.* The same is true for the full Google results pages for "Detroit Marriott," "Los Angeles InterContinental," and "Chicago Hilton": all of them produce links to OTA websites. *See* Exhibits B, C, and D. In other words, Plaintiff's key allegation—*i.e.*, that the alleged "conspiracy" has denied consumers access to any search results other than the Defendants' own websites—is undermined by the search results on which Plaintiff herself has attempted to rely. This pleading failure is fatal to Plaintiff's claim.

Plaintiff's standing allegations would be insufficient even if her allegations regarding search results were accurate. Plaintiff alleges that she decided to "save time" by reserving Marriott-branded hotel rooms directly at Marriott.com rather than by searching for "Marriott" at Google.com. (Compl. ¶ 15.) She then alleges that she "paid more for those rooms than she would have absent the Defendants' illegal conduct." (*Id.*) To be clear, Plaintiff does *not* allege that she paid more at Marriott.com than she would have paid had she booked the same room through an OTA website or had she been directed to Marriott.com as a result of a Google search. (*Id.*) Rather, the supposed link between Defendants' alleged conduct and her purported injury is far more attenuated: Plaintiff's theory appears to be that, as a result of the alleged conduct, consumers did not see advertisements by OTAs or other Defendants when, for example, they searched for "Marriott" on Google. (*See* Compl. ¶ 66.) She then speculates that, as a result, Defendants felt reduced "pressure" to lower the prices for their respective rooms. (*Id.* ¶¶ 66, 68.)

Plaintiff's theory makes no economic sense. The Complaint fails to explain how alleged restrictions on bidding for branded keywords alone impeded competition among Defendants on price where, as the Complaint concedes, there are numerous ways in which to reserve and compare hotel rooms offered by Defendants. As alleged, the challenged conduct implicates *only*

paid online keyword searches that use Defendants' branded terms, and then only when used by the other Defendants and OTAs.  (Compl. ¶ 49.)  This is a tiny subset of the many avenues Plaintiff herself recognizes consumers have to obtain comparative price information and to book hotel rooms online, avenues which remain untouched by the alleged restraint.  Even accepting her conclusory and legally defective conspiracy allegations as true, the purported violation:

- Does not bar Defendants from competing—vigorously—against each other and other hotels for any and all guests—over price, quality, or anything else—or prohibit them from advertising, including about price, and including against each other;

- Does not limit consumers' ability to search for or navigate directly to OTA websites, where comparative information on Defendants' or other hotels' rooms is readily available, or to navigate directly to Defendants' or other hotels' websites;

- Does not limit any other chains or independent hotels from bidding for Defendants' branded keywords or any other paid keyword search terms;

- Does not limit any consumer from performing generic searches—*i.e.*, without a Defendant hotel brand—for available hotels in every U.S. locality;

- Does not limit OTAs or any other hotels from bidding for the infinite number of paid keyword search terms, other than Defendants' branded terms; and

- Does not restrain "algorithmic" results generated by the search engines in response to consumers' keyword searches—even searches using Defendants' branded terms.

In short, Plaintiff's own allegations demonstrate the pervasiveness of comparative information on competitive alternatives to consumers, and the myriad ways consumers can access it.  Indeed, the Complaint alleges that the OTAs continue to grow (Compl. ¶¶ 31-33)—precisely because customers are attracted to the comparative market information they provide (*id.* ¶ 38), and continue to exert downward pressure on hotel room prices (*id.*).  Plaintiff's Complaint fails to allege facts showing how the narrow alleged paid keyword search limitations resulted in her paying higher prices for Marriott hotel rooms, much less facts showing how *all* online hotel room prices nationwide could have been higher across the entire putative class.  *See Loeb Indus.*, 306 F.3d at 485-86; *CDC Techs., Inc. v. IDEXX Labs., Inc.*, 186 F.3d 74, 80-81 (2d Cir. 1999) (plaintiff-competitor failed to demonstrate challenged exclusive dealing had an actual adverse

competitive effect where it remained able to successfully reach customers by a variety of marketing techniques and even increased its sales); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1072-74 (11th Cir. 2004) (affirming dismissal where complaint alleged both competitor-plaintiff and market continued to expand and failed to describe "*how* the defendants' alleged behavior would be likely to harm competition") (emphasis added).

Plaintiff's posited injury is thus far too indirect and remote, and her damages far too speculative, to give her antitrust standing, requiring dismissal of both Counts of her Complaint.

## IV.    DISMISSAL WITHOUT LEAVE TO AMEND IS APPROPRIATE

Finally, the Complaint should be dismissed without leave to amend because any amendment would be futile.  *See Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 823 (7th Cir. 2011) (affirming grant of motion to dismiss without leave to amend on futility grounds). Neither the facts nor Plaintiff's underlying theory can support a viable antitrust claim and Plaintiff cannot cure those fundamental deficiencies by amending her Complaint.  *See Int'l Bhd. of Teamsters Local 734 Health & Welfare Tr. Fund v. Phillip Morris, Inc.*, 34 F. Supp. 2d 656, 664 (N.D. Ill. 1998), aff'd sub nom. *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999) (dismissing with prejudice an antitrust claim where the causal connection between plaintiff's injury and the alleged antitrust injury was "riddled with rank speculation").

## V.    CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice.

Dated: June 22, 2018

Respectfully submitted,

/s/ Zachary Fardon (with consent)
Zachary Fardon (IL Bar No. 6292156)
KING & SPALDING LLP
444 W Lake Street Suite 1650
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
zfardon@kslaw.com

Jeffrey S. Cashdan (IL Bar No. 6203950)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
jcashdan@kslaw.com

*Counsel for Six Continents Hotels, Inc.*

/s/ Carrie C. Mahan (with consent)
Carrie C. Mahan (IL Bar No. 459802)
carrie.mahan@weil.com
Weil Gotshal & Manges LLP
2001 M Street, N.W.
Washington, D.C. 20036
(202) 682-7000

Stephen J. Siegel (IL Bar No. 6209054)
ssiegel@novackmacey.com
Brian E. Cohen (IL Bar No. 6303076)
bcohen@novackmacey.com
Novack and Macey LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

*Counsel for Hilton Domestic Operating Company Inc.*

/s/ Sean M. Berkowitz
Sean M. Berkowitz (ARDC No. 6209701)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 933-9767

Christopher S. Yates (admitted pro hac vice)
chris.yates@lw.com
Brendan A. McShane (admitted pro hac vice)
brendan.mcshane@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

*Counsel for Hyatt Hotels Corporation*

/s/ Paula J. Morency (with consent)
Paula J. Morency
Ann H. MacDonald
Michael K. Molzberger
Schiff Hardin LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone:  (312) 258-5500
Facsimile:  (312) 258-5600
pmorency@schiffhardin.com
amacdonald@schiffhardin.com
nnolzberger@schiffhardin.com

Robert J. Wierenga
Schiff Hardin LLP
350 South Main Street, Suite 210
Ann Arbor, MI 48104
Telephone:  (734) 222-1500
Facsimile:  (734) 222-1501
rwierenga@schiffhardin.com

*Counsel for Defendant Wyndham Hotel Group, LLC*

_/s/_ Shari Ross Lahlou (with consent)
Shari Ross Lahlou (admitted pro hac vice)
  SLahlou@crowell.com
Jeffrey L. Poston (admitted pro hac vice)
  JPoston@crowell.com
Luke van Houwelingen (admitted pro hac vice)
  LvanHouwelingen@crowell.com
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
Fax: (202) 628-5611

Adam G. Kelly (IL Bar No. 6277772)
Andrew R. DeVooght (IL Bar No. 6273361)
John A. Cotiguala (IL Bar No. 6311056)
Loeb & Loeb LLP
321 North Clark Street, Suite 2300
Chicago, IL 60654
Tele: (312) 464-3100
Fax: (312) 464-3111
akelly@loeb.com
adevooght@loeb.com
jcotiguala@loeb.com

_Counsel for Defendant Marriott International,_
_Inc._

## CERTIFICATE OF SERVICE

I, Sean M. Berkowitz, hereby certify that on this 22nd day of June, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to all filing users.

/s/ Sean M. Berkowitz
Sean M. Berkowitz (ARDC No. 6209701)

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | Google Search Result for "Honolulu Hyatt" |
| B | Google Search Result for "Detroit Marriott" |
| C | Google Search Result for "Los Angeles InterContinental" |
| D | Google Search Result for "Chicago Hilton" |

# EXHIBIT A





| | Sun, Jun 24 | Mon, Jun 25 |
|---|---|---|

**Hyatt Regency Waikiki Beach Resort and Spa**    $324
4.2 ★★★★ (2,978) · 4-star hotel
Upscale property with a pool & dining
"The rooms are amazing!!super comfy bed and pillows, room service was fanaminal!"

**Hyatt Place Waikiki Beach**    View $229
4.3 ★★★★½ (944) · 3-star hotel
Modern hotel with a bar & a pool
DEAL Get a lower price with free enrollment

**Hyatt Centric Waikiki Beach**    $259
4.4 ★★★★½ (433) · 4-star hotel
Polished hotel with ocean views & dining
"Excellent staff, delicious food and drinks, good prices."

**Honolulu Hotels | Hyatt Hotels & Resorts**
https://www.hyatt.com/destinations/honolulu ▾
Situated on the south shore of Oahu, **Honolulu** is a pocket of paradise amid the Hawaiian Islands. Savor panoramic island views from Diamond Head trail, snorkel among the colorful reefs in Haunama Bay, or lounge on the sandy beaches of Waikiki Beach. ... Enjoy a destination where the ...

**Waikiki Beach Hotel | Hyatt Regency Waikiki Beach Resort**
https://www.hyatt.com/en-US/hotel/hawaii/hyatt-regency-waikiki-beach.../hnlrw ▾
Take a splash in our outdoor pool or whirlpool overlooking famed Waikiki Beach. ... The Pualeilani Atrium Shops at **Hyatt** Regency Waikiki Beach Resort and Spa boasts world-class shopping, in three levels of unique one-of-a-kind boutiques and specialty stores encircling the open-air ...
Dining · Rooms · Map, Parking + Transportation · Area Attractions

**Hyatt Place Waikiki Beach: Make Memories at Our Waikiki Beach ...**
https://waikiki.place.hyatt.com/en/hotel/home.html ▾
★★★★½ Rating: 4.5 · 1,141 reviews
**Honolulu**, Hawaii, USA, 96815. ... Walk Three Minutes to Waikiki Beach. ... Use **Hyatt** Place Waikiki Beach to reach the eastern sands of Diamond Head, Kapiolani Park to the south, or Ala Wai golf to the north.

**Hyatt Centric Waikiki Beach: Modern Honolulu hotel near Waikiki Beach**
https://waikikibeach.centric.hyatt.com/en/hotel/home.html ▾
**Hyatt** Centric Waikiki Beach offers 230 guestrooms and suites, on-site dining, a pool, and beachfront access in Waikiki on **Honolulu**.

**Hyatt Regency Waikiki Resort & Spa - UPDATED 2018 Prices ...**
https://www.tripadvisor.com › ... › Hawaii (HI) › Oahu › Honolulu › Honolulu Hotels ▾
★★★★ Rating: 4 · 5,903 reviews · Price range: $237 - $559 (Based on Average Rates for a Standard Room)
Now $259 (Was $332) on TripAdvisor: **Hyatt** Regency Waikiki Resort & Spa, Hawaii. See 4303 traveler ... 5,903 reviews. #26 of 85 Hotels in **Honolulu**.

**Hyatt Place Waikiki Beach - UPDATED 2018 Prices & Resort Reviews ...**

https://www.tripadvisor.com › ... › Hawaii (HI) › Oahu › Honolulu › Honolulu Hotels ▾
★★★★½ Rating: 4.5 - 3,376 reviews - Price range: $210 - $375 (Based on Average Rates for a
Standard Room)
Now $218 (Was $270) on TripAdvisor: **Hyatt** Place Waikiki Beach, Hawaii. See 2955 traveler ... #17 of
85 Hotels in **Honolulu**. Save. 175 Paoakalani ...

### Hyatt Place Waikiki Beach - Waikiki Beach Hotels in Honolulu
https://www.hyattplacewaikikibeach.com/ ▾
Experience the sun, sand and surf of beautiful **Honolulu** with affordable accommodations at **Hyatt**
Place Waikiki Beach.

### Resort Hyatt Regency Waikiki HI, Honolulu, HI - Booking.com
https://www.booking.com › USA › Oahu › Honolulu Hotels › Waikiki
★★★★ Rating: 8.1/10 - 1,875 reviews - Price range: Prices for upcoming dates start at $189 per
night (We Price Match)
Located adjacent to the famous Waikiki Beach, **Hyatt** Regency Waikiki Beach Resort & Spa features a
freshwater outdoor pool, a hot tub, shops and...

### Hyatt Regency Waikiki Beach Resort & Spa - 1057 Photos & 560 ...
https://www.yelp.com › Event Planning & Services › Hotels ▾
★★★★ Rating: 4 - 560 reviews - Price range: $$$
560 reviews of **Hyatt** Regency Waikiki Beach Resort & Spa "We had a great ... Photo of **Hyatt** Regency
Waikiki Beach Resort & Spa - **Honolulu**, HI, United States.

### Hyatt Centric Waikiki Beach - Hotel in Waikiki Beach Hawaii
www.hyattcentricwaikikibeach.com/ ▾
**Hyatt** Centric Waikiki Beach delivers the total Waikiki Beach hotel experience with stellar amenities and
... Bringing the **Hyatt** Centric Brand to **Honolulu**.

Searches related to honolulu hyatt

hyatt **place honolulu**                         **hyatt** regency waikiki kamaaina
hyatt **regency waikiki spa**                **hyatt** hawaii
hyatt **regency waikiki restaurants**    **hyatt** regency waikiki parking
hyatt **waikiki centric**                        **hyatt** regency waikiki reviews



1   2   3   4   5   6   7   8   9   10       Next

● 60630, Chicago, IL - From your phone (Location History) - Use precise location - Learn more

Help      Send feedback      Privacy      Terms







Google

honolulu hyatt

Check in: Sun, Jun 24
Check out: Mon, Jun 25

**Hyatt Regency Waikiki Beach Resort and Spa** — **$324**
4.2 ★★★★ (2,978) · 4-star hotel
Polished beachfront resort with 2 restaurants & a luxe spa, plus an outdoor pool with a bar.
"The rooms are amazing!!super comfy bed and pillows, room service was fanaminal!"

**Hyatt Place Waikiki Beach** — **View** ~~$229~~
4.3 ★★★★ (944) · 3-star hotel
Contemporary lodging with free hot breakfast, plus a fitness center, an outdoor pool & a bar.
DEAL Get a lower price with free enrollment
"Easy access good breakfast good location nice rooms and friendly staff."

**Hyatt Centric Waikiki Beach** — **$259**
4.4 ★★★★ (433) · 4-star hotel
Refined hotel with a warm tapas restaurant & an outdoor splash pool, plus ocean views.
"Excellent staff, delicious food and drinks, good prices."

Can't find what you are looking for?
ADD A MISSING PLACE

60630, Chicago, IL - From your Internet address
Use precise location - Learn more
Help Send feedback Privacy Terms

# Hyatt Centric Waikiki Beach

Website | Directions | Save

4.4 ★★★★ 435 Google reviews
4-star hotel

BOOK A ROOM

**Address:** 349 Seaside Ave, Honolulu, HI 96815
**Phone:** (808) 237-1234

## Ads Check availability

Check in: Sun, Jun 24 Check out: Mon, Jun 25

| | |
|---|---|
| Hotels.com<br>Genuine Guest Reviews<br>24/7 Customer Service | $259 |
| Suiteness | $329 |
| Booking.com | $259 |
| Expedia.com | $259 |

View more room rates

## Ads Select a room

Available rooms from Expedia.com

$259
Deluxe Room, 1 King Bed wit...
2 guests · Refundable
Free Wi-Fi
RESERVE NOW

$263
Suite, 2 Queen Beds, City View
2 guests · Refundable
Free Wi-Fi
RESERVE NOW

You're signed in for easy booking

## Hotel details

Offering views of the Pacific Ocean and the Honolulu Watershed Forest Reserve's mountains, this refined hotel set in the former Waikiki Trade Center is an 8-minute walk from Waikiki Beach ... MORE

Google

honolulu hyatt

Check in: Sun, Jun 24
Check out: Mon, Jun 25

**Hyatt Regency Waikiki Beach Resort and Spa** — $324

4.2 ★★★★ (2,978) · 4-star hotel

Polished beachfront resort with 2 restaurants & a luxe spa, plus an outdoor pool with a bar.

"The rooms are amazing!!super comfy bed and pillows, room service was fanaminal!"

**Hyatt Place Waikiki Beach** — View ~~$229~~

4.3 ★★★★ (944) · 3-star hotel

Contemporary lodging with free hot breakfast, plus a fitness center, an outdoor pool & a bar.

DEAL Get a lower price with free enrollment

"Easy access good breakfast good location nice rooms and friendly staff."

**Hyatt Centric Waikiki Beach** — $259

4.4 ★★★★ (433) · 4-star hotel

Refined hotel with a warm tapas restaurant & an outdoor splash pool, plus ocean views.

"Excellent staff, delicious food and drinks, good prices."

Can't find what you are looking for?

ADD A MISSING PLACE

60630, Chicago, IL - From your Internet address

Use precise location - Learn more

Help Send feedback Privacy Terms

# Hyatt Place Waikiki Beach

Website | Directions | Save

4.3 ★★★★ 944 Google reviews

3-star hotel

BOOK A ROOM

**Address:** 175 Paoakalani Ave, Honolulu, HI 96815

**Phone:** (808) 922-3861

## Ads Check availability

Check in: Sun, Jun 24 Check out: Mon, Jun 25

| | |
|---|---|
| Hotels.com<br>Genuine Guest Reviews<br>24/7 Customer Service | $229 |
| Hyatt Place Waikiki Beach<br>DEAL Get a lower price with free enrollment | View ~~$229~~ |
| Priceline | $229 |
| Booking.com | $229 |
| View more rates | from $229 |

## Ads Select a room

HOTELS.COM EXPEDIA.COM AGODA

King Bed City View (with sofa...

2 guests · Refundable

Free breakfast Free Wi-Fi

RESERVE NOW

King Bed Mountain View (with...

2 guests · Refundable

Free breakfast Free Wi-Fi

RESERVE NOW

You're signed in for easy booking

## Hotel details

A 9.8-mile drive from Honolulu International Airport, this contemporary hotel is an 11-minute walk from the Honolulu Zoo and 2.4 miles from Diamond Head. ... MORE

Google

honolulu hyatt

Check in: Sun, Jun 24 | Check out: Mon, Jun 25

**Hyatt Regency Waikiki Beach Resort and Spa** $324
4.2 ★★★★ (2,978) · 4-star hotel
Polished beachfront resort with 2 restaurants & a luxe spa, plus an outdoor pool with a bar.
"The rooms are amazing!!super comfy bed and pillows, room service was fanaminal!"

**Hyatt Place Waikiki Beach** View ~~$229~~
4.3 ★★★★★ (944) · 3-star hotel
Contemporary lodging with free hot breakfast, plus a fitness center, an outdoor pool & a bar.
DEAL Get a lower price with free enrollment
"Easy access good breakfast good location nice rooms and friendly staff."

**Hyatt Centric Waikiki Beach** $259
4.4 ★★★★★ (433) · 4-star hotel
Refined hotel with a warm tapas restaurant & an outdoor splash pool, plus ocean views.
"Excellent staff, delicious food and drinks, good prices."

Can't find what you are looking for?
ADD A MISSING PLACE

60630, Chicago, IL - From your Internet address
Use precise location - Learn more
Help Send feedback Privacy Terms

# Hyatt Regency Waikiki Beach Resort and Spa

Website | Directions | Save

4.2 ★★★★ 2,978 Google reviews
4-star hotel

BOOK A ROOM

**Address:** 2424 Kalakaua Ave, Honolulu, HI 96815
**Phone:** (808) 923-1234

Save **$78** if you stay Tue, Jun 26–Wed, Jun 27

## Ads Check availability

Check in: Sun, Jun 24 | Check out: Mon, Jun 25

HotelPower.com $324

View more room rates

## Ads Select a room

No rooms available for easy booking for the selected dates.

## Hotel details

In 2 towers overlooking Waikiki Beach, this upscale resort is a 15-minute walk from the Waikiki Aquarium and 3 miles from Diamond Head volcano. ... MORE

Kid-friendly

**Know this place?** Answer quick questions

## Reviews

Write a review

4.2 ★★★★ Very good
2,978 reviews on Google

| Rooms | Location | Service |
|---|---|---|
| 4.0 | 4.7 | 4.2 |

What guests are saying MORE

# EXHIBIT B

Google    Detroit Marriott    🎤 🔍

All   Maps   Images   News   Videos   More    Settings   Tools

About 8,220,000 results (0.61 seconds)

**Detroit Hotel | Detroit Marriott at the Renaissance Center**
https://www.marriott.com/hotels/travel/dtwdt-detroit-marriott-at-the-renaissance-center/ ▾
Book a stay at **Detroit Marriott** at the Renaissance Center. Set in downtown Detroit, MI, our hotel offers rooms with stunning views and deluxe amenities.

**Rooms**
Unwind in style and comfort at Detroit Marriott at the ...

**Detroit Marriott at the ...**
Marriott at the Renaissance Center Pictures: Detroit hotel guest ...

**Hotel Details**
Detroit Marriott at the Renaissance Center. Renaissance Center ...

**Detroit Marriott at Renaissance ...**
Detroit Marriott at the Renaissance Center · Renaissance Center ...

More results from marriott.com »

**Detroit Marriott at the Renaissance Center Reviews | Detroit Hotel ...**
https://www.marriott.com/hotels/hotel.../dtwdt-detroit-marriott-at-the-renaissance-cent... ▾
★★★★ Rating: 4.1 · 1,874 reviews
Renaissance Center, 400 Renaissance Drive, **Detroit**, Michigan 48243 USA. ... Thank you for evaluating your stay at **Detroit Marriott** at the Renaissance Center. ... Thanks for taking the time to evaluate our hotel.

**Top Hotels in Detroit | Marriott Detroit Hotels**
https://www.marriott.com/hotel-search/detroit.hotels.michigan.united-states.travel/ ▾
Discover hotels in **Detroit**, things to do & where to stay. Our hotels are near the very best **Detroit** attractions, neighborhoods & restaurants.

**Detroit Hotel Near Ford Field | Detroit Marriott at the Renaissance Center**
https://www.marriott.com/hotels/...to.../dtwdt-detroit-marriott-at-the-renaissance-center/ ▾
Discover the city from **Detroit Marriott** at the Renaissance Center. Our hotel places you on the downtown RiverWalk near Ford Field and Little Caesars Arena.

**Detroit Marriott at the Renaissance Center - UPDATED 2018 Prices ...**
https://www.tripadvisor.com › United States › Michigan (MI) › Detroit › Detroit Hotels ▾
★★★ Rating: 3.5 · 1,753 reviews · Price range: $194 - $478 (Based on Average Rates for a Standard Room)
Book **Detroit Marriott** at the Renaissance Center, Detroit on TripAdvisor: See 1688 traveler reviews, 707 candid photos, and great deals for **Detroit Marriott** at the ...

**Detroit Marriott at the Renaissance Center - 190 Photos & 252 ... - Yelp**
https://www.yelp.com › Event Planning & Services › Hotels ▾
★★ Rating: 2.5 · 252 reviews · Price range: $$$
252 reviews of **Detroit Marriott** at the Renaissance Center "The Ren is enormous, maybe too much so. The layout is confusing and it takes forever just to find the ...

**Renaissance Center - Wikipedia**
https://en.wikipedia.org/wiki/Renaissance_Center ▾
The Renaissance Center is a group of seven interconnected skyscrapers in Downtown Detroit, Michigan, United States. Located on the International Riverfront, the Renaissance Center complex is owned by General Motors as its world headquarters. The central tower, the **Detroit Marriott** at the Renaissance Center, is the ...

**Hotel Detroit Marriott, MI - Booking.com**
https://www.booking.com › ... › Michigan › Detroit Metropolitan Area › Detroit Hotels ▾
★★★★ Rating: 8.3/10 · 661 reviews · Price range: Prices for upcoming dates start at $169 per night (We Price Match)
Rooms at the **Detroit Marriott** at the Renaissance Center have a 49" flat-screen TV with plug-in technology, a tea/coffee maker and a seating area.

**Searches related to Detroit Marriott**

detroit marriott **at the renaissance center bed bugs**     marriott **renaissance detroit pool**
detroit marriott **southfield**     detroit **renaissance center**
**courtyard** marriott **detroit**     marriott **detroit airport**
detroit marriott **troy**     **42 degrees north** marriott **detroit**



See photos

**Detroit Marriott at the Renaissance Center**

Website   Directions   Save

4.1 ★★★★ · 1,694 Google reviews
4-star hotel

**BOOK A ROOM**

**Address:** Renaissance Center, 400 Renaissance Drive, Detroit, MI 48243
**Phone:** (313) 568-8000

[Ads] Check availability

Fri, Jul 6     Sat, Jul 7

Marriott.com
Get a lower price plus free Wi-Fi with free enrollment

Expedia.com   $1
Read Real Guest Reviews
Get Instant Confirmation

Booking.com   $1

Priceline   $1

▾ View more rates    from $1

**Hotel details**
Overlooking the Detroit River, this contemporary hotel is 3 minutes' walk from the Millender Center and less than a mile from the Detroit Opera House.
MORE ▾

🛜 Paid Wi-Fi    🅿 Paid parking
❄ Air-conditioned    🧺 Laundry service
💼 Business center    ⚓ Room service

View more amenities

**Know this place?** Answer quick questions

**Review summary**   Write a review

Rooms · 4.0 ★★★★
Rooms had views & TVs · Guests liked the comfy beds · Some guests said the rooms were dated · maintenance could be improved

Goooooooooogle ›

1  2  3  4  5  6  7  8  9  10    Next

**Location** · 4.4 ★★★★★
Near the city center; shopping, sightseeing, resta
bars nearby · Easily accessible by car

**Service & facilities** · 3.9 ★★★★★
Guests appreciated the friendly, professional sta
guests said management & housekeeping could
improved

View all reviews

## Questions & answers                                  Ask a

**Q:** can people stay a night

**A:** Yes. The Marriott is a hotel within the Renaiss
Center building.

(8 more answers)

See all questions (20)

## People also search for                              View

GM                  Crowne           Greetown         T
Renaissa...         Plaza            Hotel            B
Center              Detroit D...      4-star hotel     C
Civic Center        4-star hotel                      4-

## Help improve accuracy

💬  Provide feedback                                    Sugg

⬤ 60630, Chicago, IL - From your Internet address - Use precise location - Learn more

Help    Send feedback    Privacy    Terms

# EXHIBIT C

6/18/2018

Case: 1:18-cv-01959 Document #: 69 Filed: 06/22/18 Page 40 of 49 PageID #:433
los angeles intercontinental - Google Search

Google    los angeles intercontinental

All    Maps    News    Images    Videos    More          Settings    Tools

About 14,100,000 results (0.76 seconds)

**InterContinental® Hotels | Los Angeles | InterContinental.com**
Ad www.intercontinental.com/LosAngeles/OfficialSite ▾
A world of inspiration awaits in **Los Angeles**. Book direct for our best rates! Luxurious amenities. Official
site. Earn IHG® Rewards points. Amazing resorts. Concierge insiders guide. Types: Resort Hotels, Spa
Hotels, Alliance Resorts.
⊙ 2151 Avenue of the Stars, Los Angeles, CA · (800) 496-7621

**Best Price Guarantee**                          **Save on Beach Escapes**
We promise the best price available                Members save up to 15% at hotels
or we'll match it + IHG® points!                   in select beach destinations.



| 📅 | Sun, Jun 24 | Mon, Jun 25 |

**InterContinental Los Angeles Century City**                          $275
4.4 ★★★★½ (496) · 4-star hotel
Refined hotel with chic dining & a spa
Ⓐ "The room was clean, the bed comfy and the service attentive."

**InterContinental Los Angeles Downtown**
4.5 ★★★★½ (1,248) · 5-star hotel
Posh hotel with an outdoor pool & dining
Ⓥ "Great ambience, service, drinks, and appetizers"

**InterContinental Los Angeles Downtown - Los Angeles California - IHG**
https://www.ihg.com › Home › InterContinental Hotels & Resorts › Los Angeles Hotels ▾
★★★★½ Rating: 4.3 · 373 reviews
Official site of **InterContinental Los Angeles** Downtown. Feel connected through authentic, memorable
experiences. Book online for the Best Price Guarantee.

**InterContinental Los Angeles Downtown Hotel**
dtla.intercontinental.com/ ▾
Jun 18, 2017 - **InterContinental Los Angeles** Downtown hotel features luxurious guest rooms, amenities,
and beautiful meeting rooms. Book today for our Best ...
Club InterContinental · Dining · Offers · Contact Us

**InterContinental Los Angeles Downtown - UPDATED 2018 Prices ...**
https://www.tripadvisor.com › ... › California (CA) › Los Angeles › Los Angeles Hotels ▾
★★★★ Rating: 4 · 338 reviews · Price range: $256 - $593 (Based on Average Rates for a Standard
Room)
Book **InterContinental Los Angeles** Downtown, **Los Angeles** on TripAdvisor: See 302 traveler reviews,
785 candid photos, and great deals for **InterContinental** ...

**InterContinental Los Angeles Century City - UPDATED 2018 Prices ...**
https://www.tripadvisor.com › ... › California (CA) › Los Angeles › Los Angeles Hotels ▾
★★★★½ Rating: 4.5 · 2,256 reviews · Price range: $321 - $555 (Based on Average Rates for a
Standard Room)
Now $287 (Was $405) on TripAdvisor: **InterContinental Los Angeles** Century City, **Los Angeles**. See
1931 traveler reviews, 1196 candid photos, and great ...

**InterContinental Los Angeles Century City: Los Angeles Hotel**
www.intercontinentallosangeles.com/ ▾

Balconies/terraces on every room, our luxury **Los Angeles** hotel near Beverly Hills is one of the city's finest.

InterContinental Los Angeles · Los Angeles Hotel Services · Photo Gallery · Location

## Top stories

InterContinental Hotels Group goes after high-end guests and fans of chocolate milk and cookies

Los Angeles Times · 2 days ago

→  More for los angeles intercontinental

InterContinental Los Angeles Downtown - 782 Photos & 188 Reviews ...

https://www.yelp.com › Event Planning & Services › Hotels ▾

★★★☆☆ Rating: 3.5 - 188 reviews - Price range: $$$

188 reviews of **InterContinental Los Angeles** Downtown "This location lives up to the **intercontinental** standard. I loved my stay here. My suite was super nice, the ...

Images for los angeles intercontinental

    

→  More images for los angeles intercontinental                                      Report images

Hotel InterContinental - Los Angeles Downtown, CA - Booking.com

https://www.booking.com › ... › Los Angeles Hotels › Downtown LA

★★★★★ Rating: 9/10 - 620 reviews - Price range: Prices for upcoming dates start at $207 per night

(We Price Match)

Boasting an outdoor pool, **InterContinental** - **Los Angeles** Downtown is situated in the Downtown **Los Angeles** district of **Los Angeles**.

Hotel InterContinental LA Century City, Los Angeles, CA - Booking.com

https://www.booking.com › ... › Los Angeles Hotels › Century City

★★★★★ Rating: 8.6/10 - 508 reviews - Price range: Prices for upcoming dates start at $275 per night

(We Price Match)

**InterContinental Los Angeles** Century City rooms include a minibar and bathrobes. The contemporary rooms have a work desk and newspapers are delivered ...

Searches related to los angeles intercontinental

intercontinental los angeles **restaurant**

intercontinental los angeles **restaurants**

intercontinental **hotel** los angeles **downtown**

intercontinental los angeles **bar**

intercontinental los angeles **address**

intercontinental los angeles **downtown parking**

intercontinental los angeles **rooftop**

intercontinental los angeles **downtown restaurants**



1    2    3    4    5    6    7    8    9    10          Next





Google

los angeles intercontinental

M

Check in
Sun, Jun 24

Check out
Mon, Jun 25

This area may be busier than usual. Symposium on Theory of Computing is Jun 25–29.

**InterContinental Los Angeles Century City** $275
4.4 ★★★★★ (496) · 4-star hotel
Swanky rooms & suites with balconies or terraces, plus a posh restaurant, an infinity pool & a spa.
"The room was clean, the bed comfy and the service attentive."

**InterContinental Los Angeles Downtown**
4.5 ★★★★★ (1,248) · 5-star hotel
Refined rooms & suites in a chic hotel offering breakfast (fee), an outdoor pool & a rooftop bar.
"Great ambience, service, drinks, and appetizers"

Can't find what you are looking for?
ADD A MISSING PLACE

60606, Chicago, IL - From your Internet address
Use precise location - Learn more
Help · Send feedback · Privacy · Terms

# InterContinental Los Angeles Century City

Website · Directions · Save

4.4 ★★★★★ 496 Google reviews
4-star hotel

BOOK A ROOM

**Address:** 2151 Avenue of the Stars, Los Angeles, CA 90067
**Phone:** (310) 284-6500

## Ads Check availability

Check in: Sun, Jun 24 · Check out: Mon, Jun 25

| | |
|---|---|
| InterContinental Los Angeles Century City<br>Get 5% off with free enrollment | View<br>~~$303~~ |
| Hotels.com<br>Genuine Guest Reviews<br>24/7 Customer Service | $275 |
| Expedia.com | $275 |
| Booking.com | $303 |
| View more rates | from $275 |

## Ads Select a room

INTERCONTINENTAL LOS ANGELES CENTURY CITY | HOTELS.C

$303
Standard room - Book early a...
2 guests
RESERVE NOW

$303
1 king bed superior with balco...
2 guests
RESERVE NOW

You're signed in for easy booking

More photos

## Hotel details

This haute hotel is 1 mile from shopping on Rodeo Drive, 4 miles from Los Angeles County Museum of Art and 8 miles from Los Angeles International Airport. ...
MORE

Google

los angeles intercontinental

Check in: Sun, Jun 24
Check out: Mon, Jun 25

This area may be busier than usual. Symposium on Theory of Computing is Jun 25–29.

InterContinental Los Angeles Century City — $275
4.4 ★★★★★ (496) · 4-star hotel
Swanky rooms & suites with balconies or terraces, plus a posh restaurant, an infinity pool & a spa.
"The room was clean, the bed comfy and the service attentive."

InterContinental Los Angeles Downtown
4.5 ★★★★★ (1,248) · 5-star hotel
Refined rooms & suites in a chic hotel offering breakfast (fee), an outdoor pool & a rooftop bar.
"Great ambience, service, drinks, and appetizers"

Can't find what you are looking for?
ADD A MISSING PLACE

60606, Chicago, IL - From your Internet address
Use precise location - Learn more
Help Send feedback Privacy Terms

## InterContinental Los Angeles Downtown

Website | Directions | Save

4.5 ★★★★★ 1,248 Google reviews
5-star hotel

**Address:** 900 Wilshire Blvd, Los Angeles, CA 90017
**Phone:** (213) 688-7777

Available for Thu, Jun 21–Fri, Jun 22 for **$310**

Ads **Check availability**

Check in: Sun, Jun 24 Check out: Mon, Jun 25

Contact this property for rates and availability

Ads **Select a room**

No rooms available for easy booking for the selected dates.

### Hotel details

Set in a modern glass tower in Downtown, this upscale hotel is an 11-minute walk from The Grammy Museum, 1 mile from the Walt Disney Concert Hall and 10 miles from the Griffith Observatory. ... MORE

- Outdoor pool
- Air-conditioned
- Pet-friendly
- Room service
- Kid-friendly
- Restaurant

View more amenities

**Know this place?** Answer quick questions

### Reviews

Write a review

4.5 ★★★★★ Very good
1,248 reviews on Google

| Rooms | Location | Service |
|---|---|---|
| 4.4 | 4.4 | 4.2 |

What guests are saying MORE

# EXHIBIT D

Google    Chicago Hilton

All    Maps    Images    News    Videos    More    Settings    Tools

About 87,100,000 results (0.86 seconds)

**Hilton® Chicago | Official Site | hilton.com**
Ad www.hilton.com/Official_Site/Chicago ▾
★★★★★ Rating for hilton.com: 5.0 - 394 reviews
Save on Your Relaxing **Chicago**, IL Stay. Book a Room or Suite at **Hilton**®! Lowest Rates Online. Honors
Save Up To 5% Sign Up For Free & Save. Brands: **Hilton**, DoubleTree, Hampton, Garden Inn, Waldorf,
Homewood, Curio, Conrad, Home2, Embassy Suites.
📍 17 E Monroe St, Chicago, IL

**Make a Reservation**
Book Hilton Hotels & Resorts®!
Reserve Your Hotel Today.

**Specials & Packages**
Find Hilton® Hotel Specials &
Packages. Enjoy the Benefits Today!

**Hilton Downtown Chicago Hotel on Michigan Avenue**
www3.hilton.com/en/hotels/illinois/hilton-chicago-CHICHHH/index.html ▾
Official site of **Hilton Chicago** - a popular choice in downtown **Chicago** hotels. Stay on Michigan Ave
near Soldier Field. Click to book or call 855-786-4716.
Hilton Chicago Hotel with ... · Rooms and Suites · Maps & Directions · Dining



| 📅 | Sun, Jun 24 | Mon, Jun 25 |

Hilton Chicago                                                           $291
4.3 ★★★★½ (3,655) · 4-star hotel
Upscale hotel with chic dining & a pool
🔴 "Staff, food, atmosphere, new upgraded rooms, beautiful ballroom..."

Palmer House a Hilton Hotel                                              $211
4.3 ★★★★½ (4,774) · 4-star hotel
Storied hotel with opulent lobby
👤 "The service was good, however the room was a bit small for the price."

theWit Chicago - a DoubleTree by Hilton Hotel                           $234
4.4 ★★★★½ (1,310) · 4-star hotel
Posh hotel with a rooftop lounge & a spa
👤 "Great location, cozy rooms, friendly staff and some nice food downstairs."

≡ More hotels                                             About these results ⓘ

**Hilton Chicago Hotel with Indoor Pool - Amenities**
www3.hilton.com/en/hotels/illinois/hilton-chicago-CHICHHH/about/amenities.html ▾
720 South Michigan Avenue, **Chicago**, Illinois, 60605, USA TEL: +1-312-922-4400 FAX: +1-312-294-6891
To Talk to a Hotel Expert Call 1-855-760-0869. ... Between the indoor swimming pool, the seasonal
sundeck perched along the **Chicago** skyline, the largest hotel fitness center in **Chicago** ...

**Hilton Chicago Lodging - Rooms and Suites**
www3.hilton.com/en/hotels/illinois/hilton-chicago-CHICHHH/.../index.html ▾
**Hilton Chicago** hotel rooms and suites offer luxurious downtown lodging for leisure or business. Call
855-786-4716 or reserve online.

**Downtown Chicago Hilton Restaurants and Nearby Dining**
www3.hilton.com/en/hotels/illinois/hilton-chicago-CHICHHH/dining/index.html ▾

For an authentic **Chicago** dining experience, choose from **Chicago** restaurants and bars at **Hilton Chicago**: Kitty O'Sheas, Lakeside Green Lounge & The ...

## Hilton Chicago - UPDATED 2018 Prices & Hotel Reviews (IL ...
https://www.tripadvisor.com › United States › Illinois (IL) › Chicago › Chicago Hotels ▾
★★★★☆ Rating: 4 - 5,589 reviews - Price range: $145 - $527 (Based on Average Rates for a Standard Room)
Now $266 (Was $356) on TripAdvisor: **Hilton Chicago**, **Chicago**. See 5197 traveler reviews, 1771 candid photos, and great deals for **Hilton Chicago**, ...

## Hilton Chicago - Wikipedia
https://en.wikipedia.org/wiki/Hilton_Chicago ▾
The **Hilton Chicago** is a centrally-located luxury hotel in **Chicago**, Illinois, United States. The hotel is a **Chicago** landmark that overlooks Grant Park, Lake ...

| | |
|---|---|
| **Number of rooms**: 1,544 | **Floor count**: 29 |
| **Number of suites**: 90 | **Floor area**: 2,054,590-square-foot (190,878 m$^2$) |

## Hilton Chicago - 476 Photos & 541 Reviews - Hotels - 720 S Michigan ...
https://www.yelp.com › Event Planning & Services › Hotels ▾
★★★☆☆ Rating: 3 - 541 reviews - Price range: $$$
541 reviews of **Hilton Chicago** "We recently did a couple days stay with my mom (who's in her 80s) and our pug. I'm always leery of what to expect of a hotel that ...

## Hotel Hilton Chicago, IL - Booking.com
https://www.booking.com › ... › Chicago Hotels › Chicago Loop ▾
★★★★☆ Rating: 8.2/10 - 1,875 reviews - Price range: Prices for upcoming dates start at $118 per night (We Price Match)
One of our top picks in **Chicago**.Overlooking Grant Park and Lake Michigan, this hotel is within 5 minutes' walk of Millennium Park. It features on-site dining, ...

## Book Hilton Chicago- Michigan Ave Cultural Mile in Chicago | Hotels ...
https://www.hotels.com › ... › Illinois Hotels › Chicago Hotels ▾
★★★★☆ Rating: 4.2 - 1,395 votes - Price range: from $145
**Hilton Chicago**- Michigan Ave Cultural Mile in **Chicago** on Hotels.com and earn Rewards nights. Collect 10 nights get 1 free*. Read 1401 genuine guest reviews ...

## Hilton Chicago- Michigan Ave Cultural Mile: 2018 Room Prices from ...
https://www.expedia.com › ... › Illinois › Chicago Hotels › Photos › Rooms › Amenities ▾
★★★★☆ Rating: 4.2 - 4,923 reviews
Book the **Hilton Chicago**- Michigan Ave Cultural Mile - Overlooking Grant Park in downtown **Chicago**, this landmark **Hilton** hotel is within walking distance of ...

### Searches related to Chicago Hilton

| | |
|---|---|
| hilton chicago **address** | **restaurants near** chicago hilton |
| hilton chicago **restaurant** | hilton chicago **parking** |
| hilton chicago **downtown** | hilton chicago **hotel** |
| hilton chicago **pool** | hilton chicago **chicago, il** |



1  2  3  4  5  6  7  8  9  10          Next

Case: 1:18-cv-01959 Document #: 65 Filed: 06/22/18 Page 47 of 49 PageID #:440

Google

Chicago Hilton

Check in: Sun, Jun 24
Check out: Mon, Jun 25

This area may be busier than usual. Chicago Pride Parade is Jun 24.

**Hilton Chicago** $291
4.3 ★★★★★ (3,655) · 4-star hotel
Polished lodging offering sleek rooms, plus a chic grill restaurant, an Irish pub & an indoor pool.
"Staff, food, atmosphere, new upgraded rooms, beautiful ballroom..."

**Palmer House a Hilton Hotel** $211
4.3 ★★★★★ (4,774) · 4-star hotel
Venerable hotel with upscale quarters, plus dining, an opulent lobby, 7 ballrooms & a chic lounge.
"The service was good, however the room was a bit small for the price."

**theWit Chicago - a DoubleTree by Hilton Hotel** $234
4.4 ★★★★★ (1,310) · 4-star hotel
Polished quarters with river views in a sleek hotel offering a rooftop lounge, a tavern & a spa.
"Great location, cozy rooms, friendly staff and some nice food downstairs."

**LondonHouse Chicago, Curio Collection by** $206
4.5 ★★★★★ (1,567) · 4-star hotel
Swanky lodging in a 1920s tower, offering a spa, a bar & a rooftop restaurant with river views.
Free Wi-Fi
DEAL 18% less than usual
"RE: Rooftop restaurant- I loved the experience food and service."

**Homewood Suites by Hilton Chicago Downtown W** $219
4.6 ★★★★★ (175) · 3-star hotel
Polished all-suite property featuring complimentary breakfast, plus a gym & an indoor pool.
Free breakfast
"Incredibly friendly staff, tasty breakfast, brand new rooms, highly recommend"

**Hilton Garden Inn Chicago/North Loop** $189
4.3 ★★★★★ (424) · 3-star hotel
Unassuming rooms in a polished hotel with a restaurant, a gym & views of the river.
Free Wi-Fi
"Great room and location cozy place friendly staff cool vibes"

**Hilton Garden Inn Chicago Downtown/Magnific** $249
4.2 ★★★★★ (476) · 3-star hotel

# Hilton Chicago

Website | Directions | Save

4.3 ★★★★★ 3,655 Google reviews
4-star hotel

BOOK A ROOM

**Address:** 720 S Michigan Ave, Chicago, IL 60605
**Phone:** (312) 922-4400

Save **$98** if you stay Sat, Jun 23–Sun, Jun 24

## Ads Check availability

Check in: Sun, Jun 24 Check out: Mon, Jun 25

| | |
|---|---|
| Hilton Chicago Official site<br>Free Wifi + Lowest Price<br>Join Hilton Honors & Save | $322 |
| Hotels.com | $322 |
| Expedia.com | $322 |
| Booking.com | $322 |
| View more rates | from $291 |

## Ads Select a room

HOTELS.COM | EXPEDIA.COM | TRAVELOCITY.COM

Room, 2 Queen Beds - Semi...
2 guests · Refundable
RESERVE NOW

Room, 2 Queen Beds
2 guests · Refundable
RESERVE NOW

You're signed in for easy booking

Hotel details

Case: 1:18-cv-01959 Document #: 65 Filed: 06/22/18 Page 48 of 49 PageID #:441

Google

Chicago Hilton

Check in: Sun, Jun 24
Check out: Mon, Jun 25

This area may be busier than usual. Chicago Pride Parade is Jun 24.

**Hilton Chicago** $291
4.3 ★★★★★ (3,655) · 4-star hotel
Polished lodging offering sleek rooms, plus a chic grill restaurant, an Irish pub & an indoor pool.
"Staff, food, atmosphere, new upgraded rooms, beautiful ballroom..."

**Palmer House a Hilton Hotel** $211
4.3 ★★★★★ (4,774) · 4-star hotel
Venerable hotel with upscale quarters, plus dining, an opulent lobby, 7 ballrooms & a chic lounge.
"The service was good, however the room was a bit small for the price."

**theWit Chicago - a DoubleTree by Hilton Hotel** $234
4.4 ★★★★★ (1,310) · 4-star hotel
Polished quarters with river views in a sleek hotel offering a rooftop lounge, a tavern & a spa.
"Great location, cozy rooms, friendly staff and some nice food downstairs."

**LondonHouse Chicago, Curio Collection by** $206
4.5 ★★★★★ (1,567) · 4-star hotel
Swanky lodging in a 1920s tower, offering a spa, a bar & a rooftop restaurant with river views.
Free Wi-Fi
DEAL 18% less than usual
"RE: Rooftop restaurant- I loved the experience food and service."

**Homewood Suites by Hilton Chicago Downtown W** $219
4.6 ★★★★★ (175) · 3-star hotel
Polished all-suite property featuring complimentary breakfast, plus a gym & an indoor pool.
Free breakfast
"Incredibly friendly staff, tasty breakfast, brand new rooms, highly recommend"

**Hilton Garden Inn Chicago/North Loop** $189
4.3 ★★★★★ (424) · 3-star hotel
Unassuming rooms in a polished hotel with a restaurant, a gym & views of the river.
Free Wi-Fi
"Great room and location cozy place friendly staff cool vibes"

**Hilton Garden Inn Chicago Downtown/Magnific** $249
4.2 ★★★★★ (476) · 3-star hotel

## Palmer House a Hilton Hotel

Website | Directions | Save

4.3 ★★★★★ 4,774 Google reviews
4-star hotel

BOOK A ROOM

**Address:** 17 E Monroe St, Chicago, IL 60603
**Phone:** (312) 726-7500

### Ads Check availability

Check in: Sun, Jun 24 Check out: Mon, Jun 25

| | |
|---|---|
| Palmer House a Hilton Hotel Official site<br>Free Wifi + Lowest Price<br>Join Hilton Honors & Save | $211 |
| Hotels.com | $211 |
| Booking.com | $211 |
| Expedia.com | $211 |
| View more rates | from $211 |

### Ads Select a room

HOTELS.COM | EXPEDIA.COM | TRAVELOCITY.COM

$211

Room, 1 Double Bed, Non S...
2 guests · Refundable
RESERVE NOW

$220

Room, 1 Double Bed, Non S...
2 guests · Refundable
RESERVE NOW

You're signed in for easy booking

### Hotel details

Set in the theatre and financial district, this plush, venerable hotel with an opulent frescoed lobby is a 3-minute walk from the Art Institute of Chicago and 10 minutes on foot from Willis... MORE

Google

Chicago Hilton

Check in Check out

Sun, Jun 24 | Mon, Jun 25

This area may be busier than usual. Chicago Pride Parade is Jun 24.

Hilton Chicago $291
4.3 ★★★★★ (3,655) · 4-star hotel
Polished lodging offering sleek rooms, plus a chic grill restaurant, an Irish pub & an indoor pool.
"Staff, food, atmosphere, new upgraded rooms, beautiful ballroom..."

Palmer House a Hilton Hotel $211
4.3 ★★★★★ (4,774) · 4-star hotel
Venerable hotel with upscale quarters, plus dining, an opulent lobby, 7 ballrooms & a chic lounge.
"The service was good, however the room was a bit small for the price."

theWit Chicago - a DoubleTree by Hilton Hotel $234
4.4 ★★★★★ (1,310) · 4-star hotel
Polished quarters with river views in a sleek hotel offering a rooftop lounge, a tavern & a spa.
"Great location, cozy rooms, friendly staff and some nice food downstairs."

LondonHouse Chicago, Curio Collection by $206
4.5 ★★★★★ (1,567) · 4-star hotel
Swanky lodging in a 1920s tower, offering a spa, a bar & a rooftop restaurant with river views.
Free Wi-Fi
DEAL 18% less than usual
"RE: Rooftop restaurant- I loved the experience food and service."

Homewood Suites by Hilton Chicago Downtown W $219
4.6 ★★★★★ (175) · 3-star hotel
Polished all-suite property featuring complimentary breakfast, plus a gym & an indoor pool.
Free breakfast
"Incredibly friendly staff, tasty breakfast, brand new rooms, highly recommend"

Hilton Garden Inn Chicago/North Loop $189
4.3 ★★★★★ (424) · 3-star hotel
Unassuming rooms in a polished hotel with a restaurant, a gym & views of the river.
Free Wi-Fi
"Great room and location cozy place friendly staff cool vibes"

Hilton Garden Inn Chicago Downtown/Magnific $249
4.2 ★★★★★ (476) · 3-star hotel

## theWit Chicago - a DoubleTree by Hilton Hotel

Website | Directions | Save

4.4 ★★★★★ 1,310 Google reviews
4-star hotel

BOOK A ROOM

**Address:** 201 N State St, Chicago, IL 60601
**Phone:** (312) 467-0200

Ads Check availability

Check in Sun, Jun 24 Check out Mon, Jun 25

| | | |
|---|---|---|
| theWit Chicago - a DoubleTree by Hilton Hotel Official site<br>Free Wifi + Lowest Price<br>Join Hilton Honors & Save | $239 | > |
| Hotels.com | $239 | > |
| Booking.com | $239 | > |
| trivago.com | $238 | > |

View more rates from $234

Ads Select a room

Available rooms from Hotels.com

One King Bed - Semi Flex
2 guests · Refundable
RESERVE NOW

One King Bed, Accessible (R...
2 guests · Refundable
RESERVE NOW

You're signed in for easy booking

Hotel details
Next to an El station on a street lined with upscale shops and restaurants, this sleek hotel in the Theater District is 2 blocks from the Chicago River and 11 minutes' walk from the ... MORE





