UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN TICHY,<br><br>                         Plaintiff,<br><br>     v.<br><br>HYATT CORPORATION; HILTON DOMESTIC OPERATING COMPANY INC.; SIX CONTINENTAL HOTELS, INC.; MARRIOTT INTERNATIONAL, INC.; CHOICE HOTELS INTERNATIONAL, INC.; and WYNDHAM WORLDWIDE CORPORATION,<br><br>                         Defendants. | Case No. 1:18-cv-01959<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge M. David Weisman |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' JOINT MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   PLAINTIFF'S ALLEGATIONS ........................................................................... 1

III.  ARGUMENT ....................................................................................................... 3

A.    Plaintiff states a claim under § 1 of the Sherman Act by alleging both direct evidence of agreement and plus factors that make a claim of conspiracy plausible. ................................................................................. 3

B.    Plaintiff has antitrust standing because the harm she suffered— paying more for the hotel rooms she booked online than she would have absent Defendants' conspiracy—is exactly the harm that Defendants sought to inflict. ..................................................................... 10

C.    If the Court concludes that Plaintiff's Complaint warrants dismissal, the dismissal should be without prejudice so that Plaintiff may cure by amendment. .......................................................................................... 15

IV.   CONCLUSION .................................................................................................. 15

CERTIFICATE OF SERVICE ....................................................................................... 1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re 1-800 Contacts, Inc.,*
Docket No. 9372, 2017 FTC LEXIS 125 (F.T.C. Oct. 27, 2017).............................................. 13, 14

*Anderson News, L.L.C. v. Am. Media, Inc.,*
680 F.3d 162 (2d Cir. 2012) .................................................................................................8

*Atl. Richfield Co. v. USA Petroleum Co.,*
495 U.S. 328 (1990)............................................................................................................11

*Bates v. State Bar of Arizona,*
433 U.S. 350 (1977)............................................................................................................13

*Bausch v. Stryker Corp.,*
630 F.3d 546 (7th Cir. 2010)..............................................................................................15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................... 4, 6, 9

*Blue Shield of Virginia v. McCready,*
457 U.S. 465 (1982)............................................................................................................10

*In re Broiler Chicken Antitrust Litig.,*
290 F. Supp. 3d 722 (N.D. Ill. 2017) ...............................................................................7, 8

*In re Dealer Mgmt. Sys. Antitrust Litig.,*
No. 18 CV 864, 2018 WL 2193236 (N.D. Ill. May 14, 2018)............................................8

*Domanus v. Locke Lord LLP,*
847 F.3d 469 (7th Cir. 2017)...............................................................................................3

*Engel v. Buchan,*
710 F.3d 698 (7th Cir. 2013)...............................................................................................3

*Evergreen Partnering Grp., Inc. v. Practiv Corp.,*
720 F.3d 33 (1st Cir. 2013) .............................................................................................6, 8

*F.T.C. v. Indiana Fed'n of Dentists,*
476 U.S. 447 (1986)............................................................................................................14

*Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assocs., Inc.,*
787 F. Supp. 2d 725 (N.D. Ill. 2011)..............................................................................9, 10

*Kleen Products, LLC v. Packaging Corp. of Am.*,
  775 F. Supp. 2d 1071(N.D. Ill. 2011) ..........................................................7, 8

*Loeb Indus., Inc. v. Sumitomo Corp.*,
  306 F.3d 469 (7th Cir. 2002)..........................................................................13

*McCready v. Blue Shield of Va.*,
  649 F.2d 228 (4th Cir. 1981) ........................................................................12

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)..................................................................................12, 13

*Mordi v. Zeigler*,
  870 F.3d 703 (7th Cir. 2017)............................................................................3

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) ......................................................................4, 9

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*,
  468 U.S. 85 (1984)..........................................................................................10

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
  435 U.S. 679 (1978) .......................................................................................14

*Neptun Light, Inc. v. City of Chicago*,
  No. 17-CV-8343, 2018 WL 1794769 (N.D. Ill. Apr. 16, 2018)......................15

*In re Online Travel Company (OTC) Hotel Booking Antitrust Litig.*,
  997 F. Supp. 2d 526 (N.D. Tex. 2014)........................................................9, 10

*Parko v. Shell Oil Co.*,
  739 F.3d 1083 (7th Cir. 2014) .......................................................................15

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979) .................................................................................11, 12

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015)............................................................................8

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010)........................................................................6, 7

*Thompson v. 1-800 Contacts, Inc.*,
  No. 2:16-CV-1183-TC, 2018 WL 2271024 (D. Utah May 17, 2018) ........11, 12

*United States v. Socony-Vacuum Oil Co.*,
  310 U.S. 150 (1940).......................................................................................12

*Viamedia, Inc. v. Comcast Corp.*,
   218 F. Supp. 3d 674 (N.D. Ill. 2016) ................................................................................ 13

*Walker v. Wallace Auto Sales, Inc.*,
   155 F.3d 927 (7th Cir. 1998) ............................................................................................ 3

## STATUTES

Sherman Act, 15 U.S.C. § 1 .......................................................................................... *passim*

## I. INTRODUCTION

In 2015, the Defendant hotel companies agreed to raise or stabilize the prices of hotel rooms that consumers book online. Defendants executed this price-fixing agreement by manipulating the content at the top of the results page generated when consumers look for a hotel room using a search engine like Google or Bing. The purpose of Defendants' agreement was to steer those consumers to Defendants' websites, thereby diluting competition in the market for direct online sales of hotel-room reservations. Plaintiff alleges that Defendants' scheme was successful, causing Plaintiff and other consumers to pay a higher price for the hotel rooms they booked online than they would have but for Defendants' unlawful conduct.

Read in full—complete with the allegations that Defendants neglect to address—the Complaint states a claim under the Sherman Act, setting forth plausible allegations of an anticompetitive horizontal agreement between Defendants and concerted actions they took to implement that agreement. Likewise, the Complaint establishes Plaintiff's antitrust standing by showing that Plaintiff suffered the exact harm (i.e., higher prices for hotel rooms booked online) Defendants sought to inflict and the antitrust laws were intended to prevent.

Accordingly, Defendants' motion to dismiss should be denied.

## II. PLAINTIFF'S ALLEGATIONS

Although they provide some value to hotel companies, online travel agencies like Priceline and Expedia also are a thorn in their side because they enable consumers to easily comparison shop for hotel rooms. Comparison shopping increases competition, leading to lower hotel-room prices.[1] Hotel companies therefore prefer that consumers book rooms directly from their websites, which do not display competing offers and thus give hotels more control over price.[2] Because online travel

---

[1] *See* Pl.'s First Am. Compl. ("Compl.") (Dkt. No. 58), ¶¶ 2, 10, 29, 35, 38–39, 43.

[2] *Id.* at ¶¶ 35–38.

agencies account for a majority of hotel rooms booked online, however, the hotel companies cannot afford to sever ties with the agencies.[3]

In 2015, Defendants agreed to address the problem of online travel agencies' increasing competition by steering online consumer traffic away from the agencies' websites and to the websites of Defendants, thereby raising or stabilizing the prices of hotel rooms booked online.[4] Defendants did so by manipulating the advertisements that appear on search-results pages.[5]

When a person uses a search engine to perform a keyword search, they are taken to a results page associated with that keyword.[6] The top of the results page is valuable virtual real estate because it is the first thing a consumer sees after executing a keyword search.[7] Recognizing the value of the top of the results page, search engines generally reserve it for paid advertisements. Accordingly, the space at the top goes to the highest bidder for the keyword that generates that particular results page.[8] The auctioned keyword can be either a generic keyword (e.g., "hotel room") or a keyword that includes a brand name (e.g., "Honolulu Hyatt" or "New York Hilton").[9] Because branded-keyword advertising drives traffic to their websites, hotels used to bid aggressively for keywords associated with their brands or the brands of other hotel companies; online travel agencies did likewise.[10]

In order to steer online consumer traffic to their own websites— thereby raising or stabilizing the prices of hotel rooms booked online—Defendants agreed (1) that they would not bid for branded keywords that contained each other's brands and (2) that each Defendant would

---

[3] *Id.* at ¶¶ 38, 61.

[4] *Id.* at ¶¶ 3, 12, 49, 51.

[5] *Id.* at ¶¶ 1, 12–13, 45, 49–53.

[6] *Id.* at ¶ 4.

[7] *Id.*

[8] *Id.*

[9] *See id.* at ¶¶ 4–5, 30.

[10] *Id.* at ¶¶ 6–10, 29–30.

contractually prohibit the online travel agencies from bidding for that Defendant's branded keywords.[11] Defendants' officers discussed and formed this agreement at various industry meetings.[12]

In 2015, Defendants began executing their scheme: they ceased bidding for each other's branded keywords and imposed contractual prohibitions against branded-keyword advertising on the online travel agencies.[13] Defendants' scheme had the intended effect of steering consumers away from the websites of online travel agencies and to Defendants' websites.[14] This steering of consumers lessened competition in the market for direct online sales of hotel-room reservations, raised or stabilized hotel-room prices, and harmed Plaintiff and consumers like her, who—but for Defendants' unlawful conduct—would have paid less for the hotel rooms they booked online.[15]

## III. ARGUMENT

### A. Plaintiff states a claim under § 1 of the Sherman Act by alleging both direct evidence of agreement and plus factors that make a claim of conspiracy plausible.

Plaintiff—not Defendants—is the master of the Complaint,[16] which must be read as a whole.[17] Moreover, the factual allegations in the Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor.[18]

Defendants turn these fundamental legal principles on their head by tacitly excising from the Complaint allegations that are central to Plaintiff's claim, including that Defendants agreed to—and

---

[11] *Id.* at ¶¶ 12, 45, 49.

[12] *Id.* at ¶ 45.

[13] *Id.* at ¶¶ 50–51.

[14] *Id.* at ¶¶ 55–59.

[15] *Id.* at ¶¶ 59, 65–66, 69–70.

[16] *Mordi v. Zeigler*, 870 F.3d 703, 707 (7th Cir. 2017).

[17] *See Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013); *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 930 (7th Cir. 1998).

[18] *See Domanus v. Locke Lord LLP*, 847 F.3d 469, 478 (7th Cir. 2017).

did—refrain from bidding for each other's branded keywords.[19] Rather than addressing the

significant allegations, Defendants argue that the Complaint alleges only independent and innocuous

conduct: (1) each Defendant placed similar branded-keyword provisions in its lodging agreements

with online travel agencies, and (2) Defendants attended the same industry conferences.[20]

Defendants' argument ignores allegations that, read together, state a plausible claim.

Significantly, the Complaint alleges that Defendants (1) bid for competitors' branded keywords,[21]

(2) agreed to cease bidding on each other's branded keywords,[22] and (3) executed the agreement by

concurrently ceasing to bid on each other's branded keywords in 2015.[23] These allegations describe

precisely the type of behavior that the Supreme Court recognizes as stating a claim under § 1 of the

Sherman Act—namely, an agreement together with "parallel behavior that would probably not result

from chance, coincidence, independent responses to common stimuli, or mere interdependence

unaided by an advance understanding among the parties."[24]

Defendants maintain that Plaintiff must plead "evidentiary facts": "who did what, to whom

(or with whom), where, and when."[25] But Defendants' arguments ignore the many allegations in the

Complaint—and the concomitant reasonable inferences—that chronicle such evidentiary facts:

▫ Defendants had a motive to collude to steer consumers away from online
travel agencies because the agencies "are costly to hotels and put downward

---

[19] Compl. ¶¶ 1, 12, 49–50, 82. While Defendants acknowledge this allegation in the fact section of their memorandum, Defs.' Mem. of Law in Supp. of Joint Mot. to Dismiss First Am. Compl. ("Defs.' Mem.") (Dkt. No. 65), 5, they do not mention it in their argument. *See id.* at 7–14.

[20] Defs.' Mem. 9, 11

[21] Compl. ¶¶ 29–30.

[22] *Id.* at ¶¶ 1, 12, 49–50, 82.

[23] *Id.* at ¶ 50.

[24] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n.4 (2007) (listing "examples of parallel conduct allegations that would state a § 1 claim under [the *Twombly* pleading] standard" (citations and internal quotation marks omitted)).

[25] Defs.' Mem. 8 (quoting *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015)) (internal quotation marks omitted).

pressure on the prices of hotel rooms [by] expos[ing] the consumer to a wide variety of competitive choices."[26]

□   Defendants have an incentive to steer customers away from online travel agencies' websites because "an identically priced room [booked] through the hotel website is usually more profitable to Defendants" and because "Defendants would prefer that the customer relationship, and any data associated with that customer, be directly with the hotel."[27]

□   "Appearing at or near the top of a search results page is in [a] competing hotel's interest, and bidding for [a competitor's] keyword can help ensure that happens."[28] Thus, a hotel company that *independently* chose to refrain from bidding on its competitors' branded keywords would be acting against its economic self-interest.

□   Before the beginning of the alleged conspiracy, "[o]nline travel agencies and competing [hotel companies] regularly bid for branded keywords."[29]

□   Defendants used meetings of the American Hotel and Lodging Association "and other meetings to discuss, coordinate, and arrive at their illegal scheme to stop competitive branded keyword bidding," and they did so through their officers, including Rena Hozore Reiss (officer of Defendant Hyatt), Jim Holthouser (officer of Defendant Hilton), David Grissen (officer of Defendant Marriott), Keith Pierce (officer of Defendant Wyndman), and Joel Eisemann (officer of Defendant Six Continents).[30]

□   As a result of their meetings in 2014 and 2015, Defendants entered the horizontal agreement in or about 2015, "seeking to temper the downward pressure that [online travel agencies] exerted on hotel room pricing."[31]

□   Beginning in 2015, Defendants "executed their unlawful scheme" by "ceas[ing] [to] bid[ ] on each other's branded keywords," and "imposing roughly identical prohibitions against branded keyword advertising on the [online travel agencies] in their agreements with them."[32]

□   Since Defendants executed their alleged conspiracy, "competitive advertising in response to branded keywords has largely ceased in the hotel industry."[33]

---

[26] Compl. ¶ 2; *see id.* at ¶¶ 3, 33, 35, 39, 43.

[27] *Id.* at ¶¶ 36–37.

[28] *Id.* at ¶ 9.

[29] *Id.* at ¶ 10; *see id.* at ¶ 29.

[30] *Id.* at ¶ 45.

[31] *Id.* at ¶ 49.

[32] *Id.* at ¶¶ 50–51; *see also id.* at ¶¶ 52-53 (examples of the almost identical prohibitions contained in the lodging agreements).

[33] *Id.* at ¶ 13.

       □    "The result of these agreements between Defendants . . . is visible in the search results of the major search engines."[34] For example, "[a] search for Honolulu Hyatt on Bing yields only ads from Hyatt and from non-owned [online travel agencies]. A search for Detroit Marriott on Google yields only a single ad from Marriott. Neither yields any ads from competitors, nor any from the well-known Priceline or Expedia websites that make up over 90% of [online travel agencies'] traffic."[35] Moreover, "[a] search for Los Angeles InterContinental yields only advertisements for InterContinental[.]"[36] And "[t]he same is true for a search for Chicago Hilton; it yields just advertisements for Hilton[.]"[37]

The excerpts above demonstrate that, read as a whole, Plaintiff's Complaint "allege[s] the general contours of when an agreement was made, supporting those allegations with a context that tends to make said agreement plausible."[38]

       Indeed, the Complaint contains precisely the types of allegations that the Seventh Circuit has determined state a claim under § 1 of the Sherman Act. In *In re Text Messaging Antitrust Litigation*, for example, the Seventh Circuit concluded that a complaint stated a claim under § 1 of the Sherman Act where it alleged that the defendants (1) "belonged to a trade association and exchanged price information directly at association meetings," (2) met at a "leadership council" that had a stated mission of "urg[ing] its members" to forgo competition, (3) engaged in "anomalous behavior" of concurrently raising their prices "in the face of steeply falling costs," and (4) "all at once . . . changed their pricing structures . . . and then simultaneously jacked up their prices."[39]

---

[34] *Id.* at ¶ 55.

[35] *Id.* at ¶ 56.

[36] *Id.* at ¶ 57.

[37] *Id.* at ¶ 58.

[38] *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 46 (1st Cir. 2013) (describing *Twombly*'s pleading standard for stating claim under § 1 of Sherman Act); *see Twombly*, 550 U.S. at 557 (explaining that "allegations of parallel conduct" state a claim under § 1 of Sherman Act when "placed in a context that raises a suggestion of a preceding agreement").

[39] 630 F.3d 622, 628 (7th Cir. 2010).

Plaintiff's allegations here are closely analogous to the allegations that stated a § 1 claim in *Text Messaging*. Plaintiff alleges that: (1) Defendants belonged to an industry association (the American Hotel and Lodging Association), the meetings of which were used to discuss and arrive at their illegal scheme to stop competitive branded keyword bidding,[40] (2) Defendants met at the Dallas Hotel Conference in November 2014, where an industry expert "highlighted the well-established industry consensus that 'technology advances with OTA's continue negative pressure on room pricing'" and "called on the hotels to 'RAISE ROOM RATES aggressively NOW,'"[41] after which the CEO of the American Hotel and Lodging Association gave a presentation calling for "Unity" and "Stronger, better alignment," identifying the competition for branded keywords as a practice that needed to be addressed,[42] (3) Defendants engaged in the anomalous behavior of "ceas[ing] bidding on each other's branded keywords,"[43] and (4) Defendants concurrently "impos[ed] roughly identical prohibitions against branded keyword advertising on the [online travel agencies] in their agreements with them," including with Expedia and Priceline, two of the largest agencies.[44]

Courts in this district also have concluded that allegations similar to Plaintiff's plead the type of "plus factors" that contribute to the plausibility of a claim under § 1 of the Sherman Act. In *In re Broiler Chicken Antitrust Litigation*, for example, the district court explained that the complaint "plausibly help[ed] to fill-out the picture of Defendants' . . . conspiratorial agreement" by alleging "suspicious timing of important industry conferences . . . followed by unusual producer actions and market movements."[45] And in *Kleen Products, LLC v. Packaging Corporation of America,* the district court

---

[40] Compl. ¶¶ 44–45.

[41] *Id.* at ¶ 43.

[42] *Id.* at ¶ 44.

[43] *Id.* at ¶ 50.

[44] *Id.* at ¶¶ 51, 61.

[45] 290 F. Supp. 3d 722, 800 (N.D. Ill. 2017).

concluded that the complaint stated a claim under § 1 by alleging "that a number of the specific capacity and pricing decisions made by Defendants were against their self-interest" and the defendants' price increases and capacity reductions occurred soon after industry events.[46] Here, Plaintiff's allegations that Defendants' actions suspiciously followed an important industry conference are analogous to the allegations in both *Broiler Chicken* and *Kleen Products*.[47]

Moreover, as in *Kleen Products*, the Complaint here alleges that Defendants took actions that were against their self-interest—namely, ceasing to bid for each other's branded keywords.[48] Before the beginning of the alleged conspiracy, competitor hotel companies regularly bid for each other's branded keywords because "[a]ppearing at or near the top of a search results page is in [a] competing hotel's interest, and bidding for [a competitor's] keyword can help ensure that happens."[49]

While Defendants ask the Court to draw inferences in their favor,[50] it is inappropriate "at the motion-to-dismiss stage to determine whether a lawful alternative explanation appear[s] more likely from the facts of the complaint."[51] Defendants' claim that their actions were based on "independent incentives" ignores Plaintiff's allegation that Defendants concurrently stopped bidding on each other's branded keywords. And the presence of other conference attendees does not render a conspiracy implausible.[52]

---

[46] 775 F. Supp. 2d 1071, 1078, 1080 (N.D. Ill. 2011).

[47] Compl. at ¶¶ 43, 49–53.

[48] *Id.* at ¶ 50.

[49] *Id.* at ¶¶ 9, 10, 29.

[50] *See, e.g.,* Defs.' Mem. 9, 12–13.

[51] *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015) (citation omitted); *see also Evergreen Partnering Grp.*, 720 F.3d at 45 ("It is not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder.").

[52] *See, e.g., Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("A court ruling on [a] motion [to dismiss] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."); *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 CV 864, 2018 WL 2193236, at *13 (N.D. Ill. May 14, 2018) (St. Eve, J.) (rejecting defendants' argument

The cases on which Defendants rely are distinguishable.[53] For example, unlike here, the plaintiffs in *Twombly* did not "directly allege illegal agreement" and instead "proceed[ed] *exclusively* via allegations of parallel conduct."[54] Moreover, the complaint in *Twombly* "mentioned no specific time, place, or person involved in the alleged conspiracies."[55] In contrast, Plaintiff here expressly alleges that Defendants agreed not to bid for keywords that contained each other's brands and that each Defendant would contractually prohibit the online travel agencies from bidding for its branded keywords.[56] Plaintiff also identifies persons involved in the conspiracy (five of Defendants' officers and their titles) and describes some of the times and places where they discussed and formed the illegal agreement (meetings of the American Hotel and Lodging Association in 2014 and 2015).[57]

Unlike the procedural posture here, the amended complaint dismissed in *In re Musical Instruments & Equipment Antitrust Litigation* was filed after plaintiffs were granted document discovery and key executive depositions.[58] While *In re Online Travel Company (OTC) Hotel Booking Antitrust Litigation*[59] also concerned hotel companies and online travel agencies, that's where the similarities between that case and this case end. The plaintiffs in *OTC Hotel Booking* alleged an "industry-wide conspiracy" made up of "two sub-agreements: a horizontal agreement not to compete among the [online travel agencies] and . . . individual [vertical] agreements" between each pair of hotels and

---

because it would have "require[d] the Court to … credit an inference in Defendants' favor . . . over a contrary one in [plaintiff's] favor").

[53] *See* Defs.' Mem. 1–3, 7–14 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *In re Musical Instruments & Equip. Antitrust Litig.,* 798 F.3d 1186 (9th Cir. 2015); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.,* 997 F. Supp. 2d 526 (N.D. Tex. 2014); *Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assocs., Inc.,* 787 F. Supp. 2d 725 (N.D. Ill. 2011) (Pallmeyer, J.)).

[54] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.11 (2007).

[55] *Id.* at 565 n.10.

[56] Compl. ¶¶ 12, 45, 49.

[57] *Id.* at ¶ 45.

[58] 798 F.3d 1186, 1191 (9th Cir. 2015).

[59] 997 F. Supp. 2d 526 (N.D. Tex. 2014).

online travel agencies.[60] Given the breadth and complexity of the conspiracy alleged in *OTC Hotel Booking*, the court concluded that more exhaustive and pointed allegations were required to state a claim for relief that was plausible on its face. A much simpler conspiracy is alleged here. Plaintiff alleges a horizontal agreement between six hotel companies to raise or stabilize the prices of hotel rooms booked online—the kind of price-fixing agreement that the Supreme Court has described as "perhaps the paradigm of an unreasonable restraint on trade."[61]

In *Frantzides*, this Court concluded that the plaintiffs' complaint failed to state a claim under § 1 of the Sherman Act because it "provide[d] no information about any agreement between [d]efendants, but simply state[d] that 'the fact that [one of the defendants] conducted collections activities for another entity strongly suggests . . . an agreement."[62] The Court also pointed out that Plaintiff's allegations were implausible "given . . . [the] economic interests" of one of the defendants.[63] Unlike the complaint in *Frantzides*, the Complaint here provides extensive allegations describing Defendants' agreement and explains how that agreement was in Defendants' economic interests.

**B.      Plaintiff has antitrust standing because the harm she suffered—paying more for the hotel rooms she booked online than she would have absent Defendants' conspiracy—is exactly the harm that Defendants sought to inflict.**

The Supreme Court has held that a plaintiff has antitrust standing if "the injury she suffered [is] inextricably intertwined with the injury the conspirators sought to inflict" through their "purposefully *anticompetitive scheme*."[64] An antitrust injury is simply an "injury of the type the antitrust

---

[60] *Id.* at 534.

[61] *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 99–100 (1984).

[62] *Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assocs., Inc.,* 787 F. Supp. 2d 725, 731(N.D. Ill. 2011) (Pallmeyer, J.)).

[63] *Id.* at 732.

[64] *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 483–84 (1982).

laws were intended to prevent and that flows from that which makes defendants' acts unlawful."[65] The Supreme Court has clarified that a *consumer* like Plaintiff establishes an antitrust injury when she alleges that "the price of the [goods or services] she bought was artificially inflated by reason of [the defendants'] anticompetitive conduct."[66] Accordingly, Plaintiff here has established both antitrust injury and antitrust standing by plausibly alleging that the prices she paid for the hotel rooms booked through Defendants' websites were artificially inflated by Defendants' unlawful agreement.

Defendants' assertion that Plaintiff lacks antitrust standing because the causal link between her injury and their conduct are too remote is unmoored from the allegations, relevant precedent, and fundamental economic principles.[67]

The very argument advanced by Defendants was recently rejected by a district court in *Thompson v. 1-800 Contacts, Inc.*[68] In *Thompson*, the plaintiffs alleged that they were injured by agreements between 1-800 Contacts and multiple competitors to "limit or withhold use of certain trademark and related key words in their bids for advertisement space on Internet search engines."[69] Rejecting the argument that the plaintiffs' injury was "too far removed from the alleged anticompetitive conduct," the court denied the motion to dismiss, agreeing that the plaintiffs' financial loss "is precisely the type of injury that is likely to result from defendants' advertising restrictions: higher search costs and higher prices."[70] The financial loss that was found to establish antitrust standing in *Thompson* is exactly the same loss alleged here: higher search costs and higher

---

[65] *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (citation and internal quotation mark omitted).

[66] *Reiter v. Sonotone Corp.*, 442 U.S. 330, 342 (1979).

[67] Defs.' Mem. 16.

[68] No. 2:16-CV-1183-TC, 2018 WL 2271024, at *2 (D. Utah May 17, 2018).

[69] *Id.*

[70] *Id.* (internal quotation marks omitted)

11

prices resulting from restrictions on branded-keyword advertising. Although the holding in *Thompson* is directly on point, Defendants do not address the district court's reasoning in that case.

Defendants next contend that Plaintiff lacks antitrust standing because she does not buy or sell branded keywords and is therefore "not a participant in the market in which she claims the challenged conduct occurred."[71] This contention is nonsensical. The relevant product market is "the direct online sale of hotel room reservations, which includes bookings through any of Defendants' websites and those of [online travel agencies]."[72] Defendants harmed competition in this market by manipulating content that appears at the top of search-results pages, thereby steering consumers away from online travel agencies and to Defendants' websites. The purpose and effect of Defendants' scheme was to fix the prices of hotel rooms booked online, and Plaintiff was directly harmed because she paid more for hotel rooms than she would have absent the conduct.[73]

That Defendants accomplished their unlawful purpose of raising or stabilizing the prices of hotel rooms by rigging bids for branded keywords does not mean that Plaintiff is not a victim of a price-fixing scheme: The Supreme Court has made clear that an agreement "formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing price[s]" is a *per se* violation of the Sherman Act "whatever machinery for price-fixing was used."[74] Likewise, the fact that "search engines and online advertisers" also were harmed by Defendants' conduct does not deprive Plaintiff

---

[71] Defs.' Mem. 15–16.

[72] Compl. ¶ 61.

[73] *See Thompson*, 2018 WL 2271024, at *4 (concluding that "Plaintiffs' purchase [of] contact lenses directly from Defendants in the market that was allegedly restrained" was "sufficient to avoid dismissal" (citing *Reiter*, 442 U.S. at 342; *McCready v. Blue Shield of Va.*, 649 F.2d 228, 231 (4th Cir. 1981); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388–89 (1992)).

[74] *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 222–23 (1940).

of antitrust standing[75] because "different injuries in distinct markets may be inflicted by a single antitrust conspiracy, and thus . . . differently situated plaintiffs might be able to raise claims."[76]

Defendants argue that "Plaintiff's theory [of harm] makes no economic sense" because keyword searches are not the only way for hotel-booking websites to compete or for consumers to get information.[77] As the Supreme Court has noted, however, "[r]estrictions on advertising serve to increase the difficulty of discovering the lowest cost seller . . . and [reduce] the incentive to price competitively. Accordingly, where consumers have the benefit of price advertising, retail prices often are dramatically lower than they would be without advertising."[78]

Indeed, an FTC administrative law judge recently found that precisely this type of economic harm (increased prices) resulted from agreements that restricted competitors of 1-800 Contacts from bidding on that company's branded keywords.[79] In examining the agreements between 1-800 Contacts and its competitors—which are closely analogous to the anticompetitive agreement alleged here—the ALJ concluded that these "advertising restraints significantly reduced informative advertising for lower-priced competitors."[80] Accordingly, the ALJ found it "more likely than not that the advertising restrictions [on branded-keyword advertising] caused at least some consumers to pay

---

[75] Defs.' Mem. 16.

[76] *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 481 (7th Cir. 2002); *see Viamedia, Inc. v. Comcast Corp.*, 218 F. Supp. 3d 674, 691 n.8 (N.D. Ill. 2016) (St. Eve, J.) (explaining that "[t]he mere fact that an antitrust violation produces two different classes of victims" does not mean that "their victories are duplicative of one another," nor does "awarding damages to one interest . . . make the other interest whole") (quoting IIA Phillip E. Areeda et al., Antitrust Law ¶ 339d (4th ed. 2014)) (internal quotation marks omitted)).

[77] Defs. Mem. 18–19.

[78] *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388 (1992) (citations and internal quotation marks omitted); *see also Bates v. State Bar of Arizona,* 433 U.S. 350, 364 (1977) (advertising "serves to inform the public of the availability, nature, and prices of products and services.").

[79] *In re 1-800 Contacts, Inc.*, Docket No. 9372, 2017 FTC LEXIS 125 (F.T.C. Oct. 27, 2017), *available at* https://bit.ly/2mpJtHn.

[80] *Id.* at *345.

more for contact lenses than they would have absent the restrictions."[81] Because "restricting advertising can constitute a consumer harm and form the basis for a finding of anticompetitive effects, and it is not necessary to also prove that prices increased and/or that output decreased,"[82] Plaintiff has established antitrust injury by alleging that Defendants restricted branded-keyword advertising for hotel rooms.[83]

Defendants also offer exhibits that purportedly undermine Plaintiff's allegation of denied access "to any search results other than Defendants' own websites."[84] But Plaintiff does *not* allege that Defendants' conspiracy affected *all* search results. The Complaint alleges only that Defendants' conspiracy has caused their websites to appear at the top of the search-results page when a consumer uses branded keywords,[85] which is confirmed by Defendants' Exhibits B, C, and D.[86] Defendants' Exhibit A is an anomaly in that it shows a Google search-results page for "honolulu hyatt" which "produces, as its first result, a Google Maps result box."[87] But this exhibit is

---

[81] *Id.* at *342; *see also F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 461–62 (1986) ("A concerted and effective effort to withhold (or make more costly) information desired by consumers for the purpose of determining whether a particular purchase is cost justified is likely enough to disrupt the proper functioning of the price-setting mechanism of the market that it may be condemned even absent proof that it resulted in higher prices or . . . the purchase of higher priced services, than would occur in its absence."); *id.* at 459 (noting that an agreement to withhold information from consumers "imped[es] the 'ordinary give and take of the marketplace') (quoting *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978)).

[82] *In re 1-800 Contacts*, 2017 FTC LEXIS 125, at *338 (citations omitted).

[83] *See* Compl. ¶ 66. The causal link is further strengthened by allegations connecting Defendants' advertising restrictions and Plaintiff's antitrust injury: (1) "[t]he online booking penetration rate in the United States is nearly 70%," (2) Defendants and the online travel agencies "account for over 75% of all hotel rooms reserved online," (3) Defendants' conspiracy "foreclosed over 90% of online travel agents" from bidding on their branded keywords, and (4) "[t]here is a consensus in economic literature that restrictions on advertising among rivals impairs competition." *Id.* at ¶¶ 61, 65.

[84] Defs.' Mem. 18.

[85] Compl. ¶¶ 55–56.

[86] Defs.' Ex. B (Dkt. No. 65), 1 (showing Marriott's website at top of Google's search-results page for "Detroit Marriott"); Defs.' Ex. C (Dkt. No. 65), 1 (showing ad for InterContinental's website at top of Google's search-results page for "los angeles intercontinental"); Defs.' Ex. D (Dkt. No. 65), 1 (showing ad for Hilton's website at top of Google's search-results page for "Chicago Hilton").

[87] Defs.' Mem. 17; Defs.' Ex. A (Dkt. No. 65), at 1.

(1) irrelevant, because the Complaint acknowledges that Defendants have not obtained a monopoly on their branded keywords,[88] and (2) inconsistent with search results obtained by Plaintiff.[89]

Finally, at the pleading stage, Plaintiff need not show that every member of the putative class was harmed. "How many (if any) of the class members have a valid claim is [an] issue to be determined *after* the class is certified."[90] Accordingly, the motion to dismiss should be denied.

**C.      If the Court concludes that Plaintiff's Complaint warrants dismissal, the dismissal should be without prejudice so that Plaintiff may cure by amendment.**

As the Seventh Circuit has made clear, "if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success."[91] Accordingly, if the Court concludes that dismissal is warranted, Plaintiff requests that such dismissal be without prejudice.

## IV.      CONCLUSION

At this stage of litigation, Plaintiff's Complaint must be read as a whole, accepting all well-pleaded allegations as true and making all reasonable inferences in Plaintiff's favor. Applying this standard, the allegations in the Complaint are more than sufficient to state a claim under the Sherman Act, 15 U.S.C. § 1, and to demonstrate Plaintiff's antitrust standing. Accordingly, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.

---

[88] *See* Compl. ¶ 56.

[89] When Plaintiff's counsel performed a Google search on June 28, 2018, using the same branded keywords ("honolulu hyatt"), Google returned a results page with an ad for Hyatt's website at the top. *See* Ex. 1 to Decl. of Zoran Tasić in Supp. of Pl.'s Resp. in Opp'n to Defs.' Joint Mot. to Dismiss.

[90] *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

[91] *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010); *see also Neptun Light, Inc. v. City of Chicago*, No. 17-CV-8343, 2018 WL 1794769, at *6 (N.D. Ill. Apr. 16, 2018) (St. Eve, J.) (dismissing without prejudice a complaint for failing to state an antitrust claim, despite court's suspicion that plaintiff's allegations "ha[d] been forced into an antitrust mold to achieve federal jurisdiction" (citation and internal quotation mark omitted)).

DATED:  July 20, 2018     Respectfully submitted,

           HAGENS BERMAN SOBOL SHAPIRO LLP

           By:    */s/ Steve W. Berman*
             Steve W. Berman
           1918 Eighth Avenue, Suite 3300
           Seattle, WA 98101
           Telephone: (206) 623-7292
           Facsimile: (206) 623-0594
           steve@hbsslaw.com

           Elizabeth A. Fegan
           Zoran Tasić
           HAGENS BERMAN SOBOL SHAPIRO LLP
           455 Cityfront Plaza Drive, Suite 2410
           Chicago, IL 60611
           Telephone: (708) 628-4949
           Facsimile: (708) 628-4950
           Email: beth@hbsslaw.com

           *Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2018, I caused the foregoing Response in Opposition to Defendants' Joint Motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to all counsel of record.


_/s/ Steve W. Berman_
Steve W. Berman