IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN TICHY, MAARTEN ALBARDA, and BARRY BAGNATO,<br>　　　　Plaintiffs,<br>　　v.<br><br>HYATT CORPORATION;<br>HILTON DOMESTIC OPERATING COMPANY INC.; SIX CONTINENTS HOTELS, INC.; MARRIOTT INTERNATIONAL, INC.; WYNDHAM HOTEL GROUP, LLC, and CHOICE HOTELS INTERNATIONAL, INC.<br>　　　　Defendants. | Case No. 18-cv-1959<br><br>Hon. Rebecca R. Pallmeyer |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL (DOC. 225)**

　　Plaintiffs' motion to compel Defendants Hyatt Corporation, Hilton Domestic Operating Company, Inc., Six Continents Hotels, Inc., Marriott International, Inc., and Wyndham Hotel Group, LLC (collectively, "Defendants") to produce voluminous data on a unilaterally-imposed schedule (Doc. 225) (the "Motion") should be denied. It is premature, abandons ongoing meet and confer discussions among the parties, and was filed without any notice to Defendants.

　　Plaintiffs seek to compel a sample production of reservation data reflecting millions of guest reservations and an additional seven years of Google Ads data (beyond the eight years already provided). However, their hastily filed Motion misrepresents the discovery record, and is part of a belated and inappropriate request to substantially expand discovery and further extend the schedule nearly three years into this case. Plaintiffs have known since January 2020 what the existing Google Ads data reflects and chose to wait until nine days before the document production deadline, October 21, 2020, to request additional discovery. Their last minute effort misrepresents the evidence and Defendants' discovery efforts, and violates Local Rule 37.2.

For these reasons, as discussed below, and those set forth in Defendants' Response to Plaintiffs' Motion to Extend the Schedule (Doc. 221), Plaintiffs' Motion should be denied.

## DISCUSSION

A.  **Failure To Comply With Local Rule 37.2**

As an initial matter, Plaintiffs did not notify Defendants that they were planning to file a motion to compel, and did not meet and confer as required by Local Rule 37.2. The Motion does not include the required statement from Local Rule 37.2 that "after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord." To the contrary, Plaintiffs' Motion states, "[a]s of November 11, 2020, each Defendant [had] responded that it is looking into the availability of the data and the burden involved with producing it." (Mot. at 5, Par. 8.) Accordingly, Defendants asked Plaintiffs to withdraw this motion and they refused. (Exhibit A.) As set forth below, Plaintiffs' decision to file this motion without notice and while meet and confer discussions remain ongoing is not just a procedural violation of Local Rule 37.2. These requests are burdensome and time consuming, and Defendants are working to determine what reservation data sampling protocol is appropriate and whether there is a workable compromise on the Google Ad data.

B.  **Request for Sample Reservation Data**

Plaintiffs' Motion demands that Defendants produce a sample set of reservation data consisting of millions of guest folios by December 15, 2020. (Doc. 225 at 1.) Given Plaintiffs' own delays in requesting this data and Defendants' commitments to work with Plaintiffs, this request is premature and there is no basis to impose Plaintiffs' requested timeline.

On January 15, 2020, Plaintiffs served their Second Set of Requests for Production, seeking a broader set of the reservation data than the sample requested in Plaintiffs' Motion. (Doc. 225-7.) Defendants served their objections to those requests on or about February 14, 2020. (*See e.g.*,

Wyndham Hotel Group LLC's Objections and Responses to Plaintiffs' Second Set of Requests for Production of Documents, attached hereto as Exhibit B.) Defendants objected to certain aspects of the reservation data request, but agreed to meet and confer regarding a fair and appropriate scope, recognizing that some of the data is relevant to class certification issues. (*Id.*)

Following service of Defendants' objections, individual Defendants held meet-and-confer sessions with Plaintiffs' counsel in February and March 2020 regarding the reservation data request and other requests made by Plaintiffs. During those sessions, Plaintiffs' counsel acknowledged that the reservation data request should be revised and committed to providing more information to Defendants. Contrary to Plaintiffs' claims (*see e.g.* Doc. 209 at 8, Doc. 225 at 3, Par. 4), during those sessions, Plaintiffs **never** said that they were investigating the proper time frame of the alleged conspiracy and the parties **did not** "agree to postpone further discussion of this data until Plaintiffs could determine the temporal scope of the discovery."[1] (*See* Exhibit C, Declaration of Ann H. MacDonald.) Instead, Plaintiffs' counsel explained that the requests were a combination of requests from different experts and they would need to consult further with those experts to clarify and potentially modify the requests. (*Id.*)

Defendants did not receive further clarification from Plaintiffs regarding their January 2020 requests until they received Plaintiffs' October 21, 2020, letter. (Doc. 221-4.) The October 21 letter requested a "sample" of reservation data reflecting ten folios a year for each hotel operating under one of Defendants' brands for a period of twenty years. (*Id.*) Given the thousands of

---

[1] Plaintiffs received the Google Ads data in January 2020. If, as they now claim, Plaintiffs had known in February or March that they planned to amend their complaint and allege a totally different relevant time period, then their actions are all the more egregious. If that was the case, then they waited approximately six months to amend their pleading while continuing to pursue discovery from that later time period – thereby, requiring defendants to produce more than 2 million pages of documents and spend hundreds of thousands of dollars producing Google Ads data, based on allegations they believed at the time to be incorrect.

properties operated by Defendants, their affiliates and franchisees, that sample alone seeks millions of records. (*See also* Doc. 221 at 10, n. 5 (providing calculation for portion of requested time period).)

Nonetheless, despite the delay, the new format, and the burden of the sample request, every Defendant then held individual meet-and-confer discussions with Plaintiffs regarding their own individual circumstances, telling Plaintiffs' counsel that they would work with their clients to understand how such a sample could be created and get back to them.

Plaintiffs' Motion again misrepresents the record on this issue. Plaintiffs detail a meet and confer they had with counsel for Six Continents and Wyndham on October 21 regarding Plaintiffs' request to extend the entire case schedule, during which Plaintiffs say they raised reservation data issues and that counsel for Six Continents and Wyndham represented that all Defendants "would not produce" any reservation and price data. (Mot. at 5.) That is simply wrong.

As an initial matter, ***Plaintiffs had not even served the letter requesting the sample when counsel for the parties conferred on October 21 at 10 a.m. CT***. (*See* Email from Plaintiffs' counsel on October 21, 2020, at 7:13 p.m. CT, including request for sample, attached hereto as Exhibit D.) In addition, on October 26, 2020, counsel for Wyndham wrote Plaintiffs' counsel to confirm that "Defense counsel will review that request with their clients, and meet and confer with you regarding the parameters and scope of our respective reservation data productions." (*See* Doc. 221-3.)

Thereafter, each defendant had further communications with Plaintiffs, clarifying their positions on the sample request. For example, on November 5, counsel for Hyatt told Plaintiffs' counsel that Hyatt was in the process of trying to extract sample data, and that, when that process is completed, the parties would be able to discuss (1) what data fields are available; (2) how far

4

back that data goes; and (3) whether there are technical issues that would render pulling older data (if it exists) unduly burdensome. (Exhibit E.) Similarly, on November 6, Plaintiffs' counsel sent counsel for Six Continents a summary of their November 6 meet and confer, which confirmed that Six Continents' counsel had informed Plaintiffs that "Six Continents is working on identifying and gathering the *sample* reservation and price data requested by Plaintiffs." (Exhibit F (emphasis in original).)

Counsel for other Defendants exchanged similar emails with Plaintiffs' Counsel. (*See* Exhibit G (November 10, 2020, Email from Marriott Counsel to Plaintiffs' counsel ("We have been working with our client to identify what is available with regard to data for RFPs 23 and 24 and will get back to you as soon as possible. We are open to meeting and conferring on these requests once we have a good sense of what our client has available.") and Exhibit H (November 11, 2020, Email from Wyndham counsel to Plaintiffs' Counsel ("We are discussing those requests with our client, and will follow up with you as we learn more about the nature, scope and quantity of the data that has been requested, and what approach would be workable for Wyndham.").) On November 11, Hilton made its sample production. (Mot. at 1, n.1.)

Nonetheless, after receiving those email confirmations and without following up with Defendants as required by Local Rule 37.2, Plaintiffs filed the Motion. In light of Plaintiffs' premature filing, the fact that Defendants have agreed to work with their clients to provide this data, and Plaintiffs' repeated delays and mischaracterizations, the Court should deny Plaintiffs' request for their unilateral deadline for production of the sample data.

C.     **Request for Seven More Years of Google Ads Data**

Plaintiffs' request to compel production of seven additional years of data from Google Ads (formerly known as Google AdWords) is equally meritless and should be denied.

5

Plaintiffs' request for more Google Ads data is largely based on their decision to ignore and misrepresent the voluminous evidence already produced. Defendants previously produced all of their Google Ads bidding data for the period January 2011 to December 2018. That was done pursuant to agreement among the parties that the start date would be January 2011, which was four years prior to the beginning of the then-alleged conspiracy period. (Doc. 225 at 3, Par. 3.) After incurring significant cost and burden, all Defendants completed that production in January 2020. (Doc. 209 at 4.)

The previously-produced data flatly contradicted the allegations in Plaintiffs' first three complaints. Plaintiffs' initial Complaint, First Amended Complaint, and Second Amended Complaint all alleged that Defendants had been regularly bidding on each other's brand terms until a 2014 trade association meeting, and then abruptly shifted that practice as a result of an unlawful agreement in 2015. (*See, e.g.*, Second Amended Complaint, Doc. 134, at Pars. 47, 12, 52 ("Beginning in 2015, the Hotel defendants executed their unlawful scheme and ceased bidding on each other's branded keywords.").) Plaintiffs now admit that allegation was wrong. (Doc. 182, Plaintiffs' Fourth Amended Complaint, Par. 64 ("Google Ads data obtained by Plaintiffs, which demonstrates that between January 1, 2011 and September 30, 2019 (the period covered by the data), Defendants engaged in minimal cross-brand advertising through Google Ads.").)

Plaintiffs claim the additional data for a new time period is relevant because "it will show when Defendants stopped bidding on each other's branded keywords, which will in turn be evidence of when Defendants' conspiracy began," and it will show "the volume of Defendants' cross-brand bidding in the pre-conspiracy period, which is relevant to quantifying damages to Class Members." (Mot. at 4, Para 5.)

6

However, the evidence produced to date demonstrates that Defendants did not *ever* regularly bid on each other's trademarked keywords, because (1) such a practice would be prohibitively expensive with a low return on investment; and (2) for many years, in many jurisdictions, trademark law has been invoked to stop such bidding. (Defendants' Response to Plaintiffs' Motion to Extend the Schedule, Doc. 221 at 7-8.)

So, Plaintiffs ignore the evidence that they have, instead asking the Court to order Defendants to produce this additional data by December 8, 2015, so they can then "determine the order and priority of other discovery." (Mot. at 5, para. 9.) In other words, Plaintiffs intend to review seven more years of Google Ads data and then request more email and other discovery from pre-2011 custodians. (*See also* Doc. 225-8, Email from Plaintiffs' Counsel to Counsel for Defendants dated October 2, 2020, requesting a meet and confer to discuss multiple topics, including "other discovery for the pre-2011 period, including the addition of pre-2011 custodians.") While this sort of a wholesale restart of ESI discovery would have been burdensome and objectionable in the first half of 2020, it is wholly impermissible at this late stage, particularly when Plaintiffs have had the other Google Ads data since January.[2]

Finally, the Google Ads data request in Plaintiffs' Motion is also premature, given that Plaintiffs' Motion was filed four days *before* Defendants' responses to Plaintiffs' amended document requests were even due, and while Defendants were considering whether they were willing or able to comply with Plaintiffs' request in order to try to reach a compromise and keep

---

[2] Throughout their recent briefing, Plaintiffs emphasize that their Fourth Amended Complaint was timely filed and that they are entitled to relevant evidence related to the allegations in that pleading. (*See e.g.* Doc. 224 at 11-12.) But the existing case schedule contemplated all of (1) the filing of any amended pleading on September 4, (2) the completion of document production by October 30, and (3) the close of fact discovery by April 9, 2021. The schedule did not end with the amended pleading deadline and contemplate that a new schedule would be set after that date.

7

this case moving towards briefing class certification. Plaintiffs' Motion also disregards discussions with individual Defendants, including the fact that some do not even have any of the requested decade-old data to produce.[3] In either event, as Plaintiffs acknowledge in Footnote 17 of their brief, they did not even formally request this data until serving their amended document requests on October 21 and their Motion to Compel was filed four days before Defendants' responses were even due. (Mot. at 5.)

## CONCLUSION

Despite receiving Defendants' Google Ads data in January, Plaintiffs waited until October to spring upon Defendants the burden of a wholesale discovery re-set, including their demand for the first steps of obtaining more Google Ads data and "samples" of millions of detailed reservation records. Equally impermissible, Plaintiffs now present their premature motion to compel, while Defendants are working with their clients to understand whether and how they can efficiently and effectively pull the reservation data samples and whether a compromise on the Google Ads data would allow the parties to efficiently stay on track to brief class certification. Plaintiffs should not be allowed to use late discovery requests to slow the parties' progress. Plaintiffs' demands and timing appear designed to apply whatever pressures they can, despite the lack of any basis for their Fourth Amended Complaint.

---

[3] For example, as Hyatt explained to Plaintiffs, Hyatt's prior production of data from January 1, 2011 forward encompasses nearly the entirety of its master account with Google. Although there is some very limited data between March 2010 to January 2011, it is approximately $4,000 in total paid search spend. And based on an estimate that Hyatt obtained from a consulting firm, it would cost nearly $10,000 in time to collect, pull, and process that minimal data for production. Finally, Hyatt has confirmed with counsel for the family of companies that served as Hyatt's digital marketing firms in the pre-2011 time period that they do not have any account information or bidding data for Hyatt, either. Accordingly, there is no data for Plaintiffs to compel from Hyatt.

For all these reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion (Doc. 225).

DATED: November 23, 2020

Respectfully submitted,

**Counsel for Defendant Wyndham Hotel Group, LLC**
/s/ Ann H. MacDonald
Paula J. Morency
Ann H. MacDonald
Michael K. Molzberger
Gregory J. Dickinson
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
pmorency@schiffhardin.com
amacdonald@schiffhardin.com
mmolzberger@schiffhardin.com

Robert J. Wierenga
Jessica A. Sprovtsoff (admitted *pro hac vice*)
SCHIFF HARDIN LLP
350 South Main Street, Suite 210
Ann Arbor, MI 48104
Tel: (734) 222-1500
Fax: (734) 222-1501
rwierenga@schiffhardin.com
jsprovtsoff@schiffhardin.com

**Counsel for Defendant Six Continents Hotels, Inc.**
/s/ Zachary Fardon
Zachary Fardon (ARDC No. 6292156)
KING & SPALDING LLP
444 W Lake Street Suite 1650
Chicago, IL 60606
Tel: (312) 995-6333
Fax: (312) 995-6330
zfardon@kslaw.com

Jeffrey S. Cashdan (ARDC No. 6203950)
Emily Shoemaker Newton (admitted *pro hac vice*)

9

Danielle Chattin (admitted *pro hac vice*)
Lohr Beck (admitted *pro hac vice*)
Logan Hobson (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
jcashdan@kslaw.com
enewton@kslaw.com
dchattin@kslaw.com
lohr.beck@kslaw.com
lhobson@kslaw.com

**Counsel for Defendant Hyatt Corporation**
/s/ Sean M. Berkowitz
Sean M. Berkowitz (ARDC No. 6209701)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 933-9767

Christopher S. Yates (admitted *pro hac vice*)
chris.yates@lw.com
Brendan A. McShane (admitted *pro hac vice*)
brendan.mcshane@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538

Tel: (415) 391-0600
Fax: (415) 395-8095

**Counsel for Defendant Hilton Domestic Operating Company Inc.**
/s/ Carrie C. Mahan
Carrie C. Mahan (ARDC No. 459802)
carrie.mahan@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 682-7000

Randi W. Singer (ARDC No. 2946671)

10

Adam Hemlock (ARDC No. 2829679)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000

Stephen J. Siegel (ARDC No. 6209054)
ssiegel@novackmacey.com
Brian E. Cohen (ARDC No. 6303076)
bcohen@novackmacey.com
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
Tel: (312) 419-6900

**Counsel for Defendant Marriott International, Inc.**

/s/ Shari Ross Lahlou
Shari Ross Lahlou (admitted *pro hac vice*)
DECHERT LLP
1900 K Street, NW
Washington, D.C., 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333
Shari.Lahlou@Dechert.com

Jeffrey L. Poston (admitted *pro hac vice*)
Luke van Houwelingen (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5611
JPoston@crowell.com
LvanHouwelingen@crowell.com

Adam A. Kelly
Andrew R. DeVooght
LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago, IL 60654
Tel: (312) 464-3100
Fax: (312) 873-4187

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 23, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

                                                  */s/ Ann H. MacDonald*